Motion to dismiss appeal denied March 11, motion to strike appellants' brief sustained June 3, 1953; argued September 15, 1954, affirmed December 15, 1954, petition for rehearing denied January 12, 1955

## BIRES ET AL. *v.* BARNEY ET AL.

254 P. 2d 234
258 P. 2d 120
277 P. 2d 751

*Hicks, Davis & Tongue,* of Portland, and *Ross & Ross,* of Kansas City, for the motion.

*E. B. Sahlstrom,* of Eugene, contra.

PER CURIAM.

The respondents J. H. Anderson and Grand Lodge, Brotherhood of Railway Carmen of America, have moved to dismiss the appeal on two grounds: First, that there is a defect of parties defendant, and, second, that the cause is moot so far as one controversy between the parties is concerned.

The plaintiffs are members of Eugene Lodge No. 149, a local lodge of the brotherhood. The defendants include, in addition to the Grand Lodge and its officers (of whom Anderson is one) 173 members of the local.

The suit has a twofold object, first, to obtain a decree declaring illegal the suspension of the local's charter by the Grand Lodge and declaring that the local is in good standing in accordance with the constitution of the brotherhood, and, second, to secure the reinstatement to membership in the local and to their respective offices of appellants Bires, former president, and Martens, former chairman, of the local, who are alleged to have been illegally ousted by the Grand Lodge.

■ All members of the local who refused to join in the suit as plaintiffs are named as parties defendants, but only two of them were served and those not served did not appear. The argument in support of the motion to dismiss is to the effect that all defendants not served are indispensable parties whose interests will necessarily be affected by the decree sought to be obtained, and that, since a court could not make a binding determination in such circumstances, the defect is jurisdictional and compels dismissal of the appeal. We do not reach the point, however, because, regardless of its validity, it could not affect the question of jurisdiction of the appeal prosecuted by the two suspended officers. The Grand Lodge and Anderson, one of its presidents, are defendants and appeared and answered in the suit. They are respondents here. It does not appear that the presence of any other parties is required for a full and complete determination of this controversy. Hence, the appeal cannot be dismissed on this ground.

It is shown by the affidavit of Thomas H. Tongue, III, one of respondents' counsel, that, after entry of the decree in the Circuit Court,

"on November 6, 1952, Irvin Barney, President of the Grand Lodge, Brotherhood of Railway Car-

men of America, wrote a letter to all members of Eugene Lodge No. 149 notifying them individually that on November 28, 1952, an election of officers for the local lodge would be held and that its suspension would then be lifted and its charter restored, all of which has been done as promised in that letter.''

There is no showing by affidavit or otherwise to the contrary. In a brief in opposition to the motion, counsel for the defendants, referring to the foregoing portion of Mr. Tongue's affidavit, say that appellants ''have no information on which to form a belief as to the accuracy of this statement.'' If this were a denial in a verified pleading it would be treated as sham, since a party is not permitted to deny on information and belief what he could have ascertained. *Logan v. Illinois River Dev. Co.,* 130 Or 570, 572, 281 P 123. We think that the appellants could have ascertained whether the local has been reinstated. We accept Mr. Tongue's undenied sworn statement as fact. The controversy over suspension of the local would thus appear to be moot. This, however, would not justify dismissal of the appeal in view of the issue concerning the suspended officers of the local which we have jurisdiction to consider. But that is the limit of our jurisdiction under the showing now made, and it would therefore appear to be a waste of time and effort on the part of counsel to write briefs upon the question of reinstatement of the local.

The motion to dismiss is denied.

ON MOTION TO STRIKE APPELLANTS' BRIEF

*Hicks, Davis & Tongue,* of Portland, for the motion.
*Thompson & Sahlstrom,* of Eugene, contra.

ROSSMAN, J.

This case is before us upon a motion made by the respondents to strike from our files the brief filed by the appellants upon 'the ground that the brief fails to comply with Rule 13 (A) 6, which follows:

"Page References to Evidence. The briefs, in referring to the evidence, must make appropriate designation of pages of the transcript of testimony or bill of exceptions, or, in case of an exhibit, the identification number or letter of the same. * * *"

The decree of the circuit court which is challenged by the appeal was entered in a suit brought by a local labor union, its officers and many of its members to gain reinstatement by judicial decree after they had been suspended by an order of their national union, the Brotherhood Railway Carmen of America.

The brief under attack is 23 pages in length and makes many references to the evidence. It, however, cites no page of the transcript of evidence and contains no reference to the exhibits whereby any of them can be readily identified. The transcript of evidence is 829 pages in length and the written exhibits are 125 in number. Many of them are bulky.

The following statement contained in the respondents' motion to strike appellants' brief has not been disputed by the appellants: "The issues presented on appeal depend largely on questions of fact." Our perusal of appellants' brief confirms that statement. In replying to the respondents' attack upon this brief, appellants' counsel state:

"1. Appellants allege that Respondents' Motion is not well taken for the reason that if there were omissions of reference to the evidence in Appellants' Statement Of The Case, that Rule 13 (2) of this Court provides an ample remedy to the Respondent as follows:

'If the respondent is not satisfied with appellant's statement of the facts, he may file a supplemental statement of the matter omitted which he deems essential to an understanding of the questions presented, in which event he shall point out with particularity the defects and inaccuracies, if any, in appellant's statement of facts.'

"The Respondent is provided with a further remedy by reason of Rule 13(7) (B) as follows:

'. . . . No statement of facts need be made beyond what may be deemed necessary in correcting any inaccuracy or omission in the statement of the appellant.'

"2. Appellants urge that Respondents' Motion is not well taken for the further reason that Appellants have not made specific reference to items of testimony or specific exhibits within the meaning of Rule 13(a) (6). In the presentation of Appellants' Brief, a summary is made of the facts contained in Appellants' 'Statement of the Case.' In the argument portion of the Brief, comments are made upon the evidence contained in the case, but no specific reference is made to particular statements of witnesses or exhibit. It is counsels' construction of this rule that its intended purpose is to make reference to particular items of testimony set forth in haec verba which for some reason are objected to or when reference is made specifically to some exhibit introduced in evidence which may have been objected to or to which some particular reference may have been made."

■ Clearly, it is not the duty of the respondents to complete the brief of the appellants. When a rule places upon a party the duty to supply citations, the duty is his. Moreover, a party who moves to strike from the files a brief deficient in citations may be unaware of any pages in the transcript which warrant the statements made in the attacked brief and, therefore, could not make the lacking interpolations. At any rate, this

court insists that the writer of the brief, and not its adversary, must supply the citations.

The rules of this court which govern the composition of briefs are simple and their appropriateness has never been questioned. They allow counsel the widest degree of forensic freedom and demand only that when he recounts the evidence he note the pages of the trancript upon which he depends.

██ Rule 13 (A) 2, to which the appellants' quoted statement refers, requires that the brief of the appellant shall begin ''with a clear and concise statement of the case, which statement should not contain a detailed recital of the facts.'' The purpose of that requirement is to obtain from counsel for the appellant at the very beginning of his brief a succinct, impartial statement of the case which afford the court a ready insight into it. Occasionally a brief begins without even saying ''This is a suit to quiet title'' or ''This is an action for libel''. Introductory statements of that kind are invitations for the court to step into the dark. The statement of the case should be informative, impartial and not argumentative. It should contain nothing which comments or expounds. The disputative efforts of counsel should be postponed until he argues in behalf of his contentions or his assignments of error. The purpose of the statement of the case should be nothing except to acquaint the court with the case and its nature. A good statement of the case, impartial in nature, is read with gratification by all who perform appellate work. Since a statement of a case rarely refers to a single episode, it is generally unnecessary to insert in it a citation to the evidence.

The rules of this court are not the only ones which require counsel for the appellant to begin his brief with a statement of the case. A glance at 4 CJS, Appeal and

Error, §§ 1318 and 1319, will indicate that court rules commonly require the opening brief to contain a clear, accurate and succinct statement of the case. Some rules require the statement to be more detailed and extensive than ours. The text just cited says:

> "The purpose of the rule requiring a statement of the case is to aid the court in quickly obtaining a comprehensive grasp of the facts of the case; and it is intended that from the statements in the brief the court may comprehend the questions involved and its business be expedited."

The Honorable Arthur T. Vanderbilt, who is now Chief Justice of the Supreme Court of New Jersey, before his appointment to the bench conducted successfully a large appellate practice. His admonitions should have value for all who write briefs. In delivering the 1950 John Randolph Tucker Memorial Lectures before Washington and Lee University, he declared.

> "In most jurisdictions a succinct statement of the question or questions to be argued is the first element of a brief. This is to aid the court in reading the statement of facts that follows intelligently in the light of the issues. Yet many counsel vitiate this requirement by obscure and verbose statement of the questions to be argued. Why they do so is an unsolved problem of abnormal legal pyschology." Forensic Persuasion, p. 20.

The brief under consideration devotes eight and one-half of its 23 pages to a statement which bears the heading "Statement of the Case". The nature of the statement indicates that counsel have misconceived the purpose which Rule 13 (A) 2 serves. They evidently believe that the statement should be argumentative rather than serve as an impartial introduction of the case to the court. Their statement, instead of attempting to acquaint the court with the case, seeks to commend the case to the court.

Rule 13 (A) 6, says:

"The briefs, in referring to the evidence, must make appropriate designation of pages of the transcript of testimony or bill of exceptions, or, in case of an exhibit, the identification number or letter of the same."

Faithful observance of the rule just quoted serves many useful purposes of which the following are only a part: (1) the rule operates as a restraint upon the impulse which many feel to go outside of the record; (2) it inclines counsel to make an accurate statement of the facts; (3) it enables counsel for the other party to check the accuracy of his opponent's brief and thus helps to bring the controversy to a narrow focus; (4) it aids this court to acquaint itself with the facts; (5) by developing the actual facts it may help to yield what all seek—a correct decision—and thus obviate the necessity which otherwise might exist of filing a petition for a rehearing.

Chief Justice Vanderbilt, in the lecture from which we quoted, said:

"* * * And may a kind fate help the lawyer who neglects to cite the appropriate spots in the record to justify his statement of facts and vainly expects the court to analyze the whole record for him in a hunt for something that it was clearly his duty to point out to the court. Worse yet is it for counsel to give an incorrect citation, either by design or mistake. But the most unpardonable offense of all is to cite a page and line of a record for a statement of fact made in the brief when no such fact appears on the cited page—* * *."

The Honorable Raymond S. Wilkins, a distinguished member of the Federal bench and author of the scholarly work "Eternal Lawyer; A Legal Biography of Cicero", in delivering a lecture entitled "The

Argument of an Appeal" before the Cornell Law School, said:

> "The facts must be fittingly set forth with supporting references to the record which are accurate and explicit. Nothing will forfeit the confidence of the court more effectively than the misstatement of the record or the statement of a fact off the record." 33 Cornell Law Quarterly 40, and 34 Mass. Law Quarterly 13, (July, 1949).

■ It is apparent that the appellants' brief, in failing to cite in support of statements which it makes the pages of the transcript or the identifying letter of an exhibit, violates the rules of this court. We think that the violations are material and prejudicial to the court's efforts to decide cases correctly. The matter in hand is apparently one of grave consequence to the parties. The record, as we have seen, is an extensive one. To search through 800 pages of transcript of testimony and through more than 100 extensive documents in search for an avowed fact is no slight task. We do not believe that our rules place upon counsel an undue burden when they require him to mention the part of the record upon which he depends for a statement of fact in which he indulges.

The motion to strike the appellants' brief will be sustained. Thirty days will be granted within which to filed a new brief in conformity with the rules of this court.

### ON THE MERITS

*E. B. Sahlstrom,* of Eugene, argued the cause for appellants. On the brief were Thompson & Sahlstrom, of Eugene.

*Thomas H. Tongue, III,* of Portland, and *John Ross,* of Kansas City, Missouri, argued the cause for respondents. With them on the brief were Hicks, Davis & Tongue, of Portland, and Ross & Ross, of Kansas City, Missouri.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN and PERRY, Justices.

PERRY, J.

This is a suit brought by Herman R. Bires and R. J. Martens, individually, and by the officers of Eugene Lodge No. 149 Brotherhood Railway Carmen of America, and by certain other individuals as members of Eugene Lodge No. 149 Brotherhood Railway Carmen of America, as plaintiffs, against Irvin Barney and other officers of the Grand Lodge Brotherhood Railway Carmen of America, the Executive Board Brotherhood Railway Carmen of America, and other individuals who were members of Eugene Lodge No. 149 Brotherhood Railway Carmen of America (who did not join as plaintiffs in the suit), as defendants.

One of the purposes of this suit in equity was to have the suspension of Eugene Lodge No. 149 Brotherhood Railway Carmen of America declared unlawful and enjoined, and for an order to be entered for the immediate reinstatement of this subordinate lodge.

It now appears that Eugene Lodge No. 149 is no longer under suspension, and, therefore, the questions raised concerning the actions of the president, Irvin Barney, and other officers of the Grand Lodge in suspending this subordinate lodge are now moot.

The plaintiffs, Herman R. Bires and R. J. Martens, as individuals, are now the only interested parties in the prosecution of this appeal. They unsuccessfully

contended in the trial court that they were each unlawfully suspended from membership in Eugene Lodge No. 149 by the general president of the Grand Lodge. From that adverse ruling they appeal.

The plaintiff, Herman R. Bires, was suspended by the general president of the Grand Lodge, Irvin Barney, on January 19, 1951. At the time of his suspension, Bires was president of the local Eugene Lodge No. 149. The plaintiff R. J. Martens, who was chairman of the local protective board of the lodge, was suspended on September 8, 1950.

The evidence introduced in this cause shows that the plaintiffs, Bires and Martens, were each suspended by the general president of the Grand Lodge in accordance with section 10 of the Constitution of the Grand Lodge, which in part provided as follows:

"* * * He shall have power to convene the General Executive Board, and have direct supervision of all lodges, with power to suspend any subordinate lodge or individual member thereof for cause or when in his judgment it is for the best interest, subject to appeal to the General Executive Board or Grand Lodge, or both when taken in the order named * * *."

The Brotherhood of Railway Carmen of America is a voluntary unincorporated organization, having subordinate lodges in various parts of the United States and Canada. In such an organization the relationship between the brotherhood and its members is contractural. Each person becoming a member of such an organization agrees to and is bound by the Constitution, the general rules and the laws of the organization, except where they involve surrender of constitutional rights or contravene public law or public policy. *Allen v. Southern Pac. Co.*, 166 Or 290, 110 P2d 933.

A provision of like import as that set out above was construed by this court in *Mursener v. Forte et al.*, 186 Or 253, 205 P2d 568, where on page 269 we said:

"The International under its Constitution and By-Laws did not have the right to usurp the functions of Local No. 72 and to exercise dominion and control over these trust funds without giving the subordinate lodge notice and an opportunity to be heard on charges filed against it. We are not unmindful that Art. IV, § 1 of the Constitution and By-Laws of the International provides that the President

'shall have the direction and supervision of all Subordinate and District Lodges, with power to suspend their individual members or Lodges, when in his judgment it is for the best interest of our International Brotherhood.'

In our opinion it is not contemplated by the above provision that the President is authorized arbitrarily or capriciously to 'suspend a lodge' and thereby interfere with or jeopardize the interest of members who are beneficiaries of such trust funds. To hold otherwise would amount to a taking of property without due process. Swaine v. Miller, 72 Mo.App. 446; Ellis v. American Federation of Labor et al, 48 Cal. App. (2d) 440, 120 P (2d) 79; Taboada v. Sociedad Espanola De Beneficencia Mutua, 191 Cal. 187, 215 P. 673, 27 A.L.R. 1508; Gardner v. Newbert et al, 74 Ind. App. 183, 128 N.E. 704; Lundine v. McKinney, (Tex. Civ. App.) 183 S.W. (2d) 265; United Brotherhood of Carpenters and Joiners of America v. Carpenters Local Union No. 14 of United Brotherhood of Carpenters and Joiners of America, (Tex. Civ. App.) 178 S.W. (2d) 558; 63 C.J., Trade Unions, 685, § 55; 10 C.J.S., Beneficial Associations, 293, § 50."

■ It is to be noted that the basis of the above statement is the violation of the subordinate lodge's right to due process of law where a property right of the

subordinate lodge is jeopardized. It is, therefore, a fundamental principle that while equity has jurisdiction in the supervision and control of unincorporated societies or associations, it will generally only exercise its powers when a property right of a unit of the society is involved, or when an individual thereof has a property right that is involved. *Local Union, A.S.M.W.I.A. v. Nalty* (1925), CCA 6th, 7 F2d 100; *Bush v. International Alliance, T.S.E.* (1942) (Cal App) 130 P2d 788; *Holmes v. Brown* (1917) 146 Ga 402, 91 SE 408; *Gardner v. Newbert* (1920) 74 Ind App 183, 128 NE 704; *Abdon v. Wallace* (1929) 95 Ind App 604, 165 NE 68; *Nissen v. International Brotherhood, T.C.S.H.* (1941) 229 Iowa 1028, 295 NW 858, 141 ALR 598; *Froelich v. Musicians Mut. Ben. Asso.* (1902) 93 Mo App 383; *Fleming v. Moving Picture Mach. Operators I.A.T.S.E.* (1938) 124 NJ Eq 269, 1 A2d 386; *Fritz v. Knaub* (1907) 57 Misc 405, 103 NYS 1003 (affirmed without opinion in (1908) 124 App Div 915, 108 NYS 1133); *Heasley v. Operative Plasterers & Cement Finishers International Asso.* (1936) 324 Pa 257, 188 A 206; *Lo Bianco v. Cushing,* 117 NJ Eq 593, 177 A 102 (affirmed in (1936) 119 NJ Eq 377, 182 A 874).

Thus where a matter is brought to the attention of the court in which purely membership questions are involved which do not involve the loss of any property right that arises out of the right of membership, the courts will not intervene.

In the case before us it is the contention of the defendants, and, therefore, the position of the defendants in interpreting the powers of the president of the Grand Lodge, that in suspending the plaintiffs, Bires and Martens, the only punishment or restriction placed upon the parties is that it "does not sever membership from the order, but deprives the member

of rights to visit lodges. A member under suspension for cause may be admitted for the purpose of paying dues and assessments, or giving evidence in a case, or to answer questions, but no other business shall be transacted while the suspended member is in the lodge room'': Sec. 131, Constitution of the Brotherhood of Railway Carmen of America. All other rights and benefits of membership of the suspended members are still retained fully by them.

■ The defendants having placed this construction upon the actions of the general president of the Grand Lodge, they cannot recede therefrom. Therefore, no property rights of these plaintiffs are in anywise jeopardized, and a court of equity will not interfere.

The decree of the trial court is affirmed.

Neither party shall recover costs.