Ruth Louise SCOVILE, Plaintiff-Appellant,

v.

Richard WATSON and Local 7-515, Oil, Chemical and Atomic Workers International Union, AFL-CIO, Defendants-Appellees.

No. 14627.

United States Court of Appeals Seventh Circuit.

Nov. 20, 1964.

Schnackenberg, Circuit Judge, dissented.

James W. Oberfell, South Bend, Ind., Crumpacker, May, Levy & Searer, South Bend, Ind., of counsel, for appellant.

Richard F. Watt, Chicago, Ill., Benjamin C. Piser, South Bend, Ind., Eugene Cotton, Irving M. King, Cotton, Watt, Rockler & Jones, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG, and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Questions concerning the interpretation of sections 101(a) (2) and 101(a) (5) of the Labor-Management Reporting and Disclosure Act of 1959 (Landrum-Griffin), 29 U.S.C. §§ 411(a) (2), 411(a) (5), are presented in this appeal. Charging violations of these sections, plaintiff Ruth Louise Scovile brought an action for damages against Local 7–515, Oil, Chemical and Atomic Workers International Union, AFL-CIO, and the local's president, Richard Watson. The district court granted defendants' motions to dismiss the complaint. Plaintiff appeals from the judgment of dismissal.

A summary of the allegations in the amended complaint follows. There existed between Whitehall Laboratories, Inc. of Elkhart, Indiana, and Local 7–515 a collective bargaining agreement which contained a grievance procedure for the settlement of disputes; plaintiff was a member in good standing of the local and was employed by the Whitehall Laboratories; from May 25, 1962, until June 11, 1962, she incurred certain medically excused absences from work; at a regular monthly meeting of the local on May 19, 1962, Watson, the local's president, and plaintiff had a verbal disagreement over union affairs and Watson, "with knowledge ,of plaintiff's previous medically excused absences" and for the purpose of injuring her union membership rights and employment security, announced that the union was not going to stand behind any member with an excessive absence record; at a special meeting of the local, held on June

2, 1962, called for the purpose of considering "job security," Watson urged the passage of a motion to deny to a member arbitration rights under the collective bargaining contract if the employee's record indicated "excessive absenteeism"; Watson's purpose in suggesting the motion was to discipline plaintiff, although he knew the motion violated the local's by-laws and constitution; upon plaintiff's return to work on June 11, 1962, the employer, with knowledge that the local would not assist her by invoking the arbitration procedure, discharged her for "excessive absenteeism"; the local refused to represent her and protect her rights as a member of the union; the action of defendants in respect to the motion of June 2, 1962, was in violation of section 101(a) (5) of the act because plaintiff was not served with a copy of written specific charges against her, nor given a reasonable time to prepare her defense, nor afforded a full and fair hearing; at a union meeting on August 18, 1962, plaintiff attempted to make a motion to have her rights of arbitration reinstated; while she was on the floor, Watson "allowed the Plaintiff to be interrupted and entertained a motion to adjourn" which motion was carried; this action violated the local's by-laws and also section 101(a) (2) of the act; by reason of the actions of the local and its president, plaintiff has been damaged in the amount of $25,000.

## I.

■ The first question is whether plaintiff's complaint is sufficient to allege a violation of section 101(a) (5) of the act.[1] Plaintiff claims that the motion passed by the local at its meeting on June 2, 1962, constituted disciplinary action against her within the meaning of this section.

Defendants contend that under the collective bargaining agreement between the local and Whitehall Laboratories the union, rather than the aggrieved employee, had the right to proceed or not to proceed to arbitration; and further that plaintiff's rights, if any, to require the union to demand arbitration over her discharge were not secured by her union membership but were derived from the collective bargaining agreement. In support of this argument, defendants cite Allen v. Armored Car Chauffeurs & Guards, 185 F.Supp. 492 (D.C.N.J. 1960). We do not adopt this reasoning. Although a right such as plaintiff asserts may be derivative, a refusal by the union under circumstances different from those alleged here to prosecute an arbitrable grievance might be considered as a disciplinary measure relating to the employee's membership in the union. Accordingly, we rest our decision on what seems to us a more plausible reason hereinafter delineated.

The allegations of the complaint make it clear that the action taken by the union was prospective and applied to the entire membership and not to plaintiff alone. It can hardly be said that "discipline" within the meaning of the statute includes action that may be taken, or rather withheld, by the union as a matter of policy. In this respect, it should be noted that at the time of plaintiff's discharge the motion had been adopted and was applicable to all members of the local including plaintiff.

## II.

■ The second issue arises from plaintiff's claim that she was deprived of her right to present a motion at the union meeting on August 18, 1962. Although freedom of speech is a union member's right that is protected by section 101(a) (2) of the act, the exercise of the right at union meetings must accommodate itself to the union's correlative right to conduct its meetings in an

1. Section 101(a) (5) reads:
"No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

orderly fashion and in accordance with its previously established rules. The statute itself places these conditions upon the right of a member.[2] In the instant case plaintiff has failed to allege that the motion to reconsider the union's failure to arbitrate her discharge was in order and proper for consideration at that time.

It may be argued that only general allegations are required to state a claim for relief under the statute and that the allegations made by plaintiff were sufficient and that a trial on the merits would provide a more satisfactory disposition of the issues. We believe, however, that claims under Title I of the Labor-Management Reporting and Disclosure Act must be stated with much greater specificity than alleged by the plaintiff in this action and that if claims are not so specific as to show a clear infringement, the complaint is defective. Policy reasons dictate that such specificity be required. Otherwise, unions might well be beset by frivolous law suits initiated by dissident members or those dissatisfied with actions taken by a majority of the union. Labor union organizational stability and democratic action within a union would likely be endangered unless allegations of a specific and substantial character are required in order to state claims for relief under the act.

The judgment of dismissal is affirmed.

SCHNACKENBERG, Circuit Judge (dissenting).

Ruth Scovile is a unique victim of injustice at the hands of President Watson of the local of which she is a member.

Chronologically it appears that on May 19, 1962, at the regular monthly meeting of the local she and Watson disagreed over the removal of a steward from the second shift, whereupon Watson, knowing that her prior absences from work were medically-excused, irrelevantly announced that the union was not going to stand behind any member with an excessive absence record. The record does not show that the union then took any action supporting his statement. Stricken physically, she was confined to a hospital for a condition, stated in oral argument to be, peculiar to womanhood. This was a medically-excused absence from work which continued from May 25 to June 11, 1962. The prestige and power of Watson were then set in motion against her. He gave as a reason that her hospital confinement constituted "an excessive absence record". While she was in the hospital, he called a special union meeting on June 2, 1962 and there secured the passage of a motion to deny a member arbitration rights if the records of the company indicated excessive absenteeism, despite the fact that a medically-excused absence did not constitute "excessive absenteeism" as defined in the collective bargaining agreement between the union and plaintiff's employer. This action was in violation of the constitution and bylaws of the union. Job security was not on the agenda for the meeting, although the notice posted stated that the subject of the meeting was "job security". No specific written charges were served on plaintiff at or prior to the meeting of June 2, 1962, and she was given no time to prepare a defense or afforded a full and fair hearing, contrary to the terms of 29 U.S.C.A. § 411(a)(5).

Consequently when plaintiff returned to work on June 11, 1962, her employer, with knowledge of said disciplinary action by Watson and the union, depriving her of assistance or protection by the use of arbitration procedure, discharged her for the alleged reason of "excessive absenteeism", and defendants have failed and refused to represent and protect her rights as a member of the union.

---

**2.** Section 101(a)(2) reads in pertinent part:

"Every member of any labor organization shall have the right * * * to express at meetings of the labor organization his views, * * * upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings * * *."

At the regular meeting of the union held on August 18, 1962, plaintiff was present and attempted to make a motion to have her rights of arbitration reinstated. While she had the floor, Watson allowed her to be interrupted and then entertained a motion to adjourn, which was then carried, contrary to rules 8 and 28 of their bylaws, and in violation of 29 U.S.C.A. § 411(a) (2).

She has exhausted all of her internal union remedies and, due to the action of defendants, she has been without employment since the date of her discharge on June 11, 1962. Wherefore she has sued the union and Watson for damages. This case is important not only to this woman but to union members generally. Neither a presiding officer of a union at a union meeting nor the union itself may pursue a course of disciplinary action against any union member in such a manner as to deprive him or her of the freedom of speech protected by the first amendment of the federal constitution and recognized by § 411(a) (2) and (5) of the act. This deprivation of her right was the culmination of Watson's calculated conduct which ruthlessly employed the naked power of a presiding officer to stifle the voice of a member who was entitled to the support of her union in her misfortune rather than suspension of rights and public ridicule.

In United States v. Roganovich, 318 F.2d 167, at 170 (1963), this court by Judge Knoch said:

> "The language of § 411(a) (2) is clear and unambiguous. It gives 'every member' a 'right * * * to express * * * his views' respecting 'any business properly before the meeting.' None of the stated limitations (provisions for reasonable rules governing meetings, responsibility of members to the union, or interference with performance of the union's legal or contractual obligations) affect the question before us.
>
> \* \* \* \* \*
>
> "* * * We conclude that Congress was seeking to preserve for union members the right of free expression secure from interference by force or threat of force from *any person*, not merely from union agents or those acting on behalf of, or in concert with, them. * * *"

I would reverse the order of the district court dismissing the complaint and remand for further proceedings consistent with these views.