Nicholas YANITY, Raymond Gawrys and George Hartung, Plaintiffs-Appellants,

v.

Clinton BENWARE and International Association of Machinists, Defendants-Appellees.

No. 223, Docket 30540.

United States Court of Appeals
Second Circuit.

Argued Jan. 4, 1967.

Decided April 11, 1967.

Lumbard, Chief Judge, dissented.

Lauren D. Rachlin, Buffalo, N. Y. (Rachlin & Rachlin, Buffalo, N. Y., on the brief), for appellants.

Richard Lipsitz, Buffalo, N. Y. (Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N. Y., on the brief), for appellees.

Before LUMBARD, Chief Judge, and FRIENDLY and HAYS, Circuit Judges.

HAYS, Circuit Judge:

Plaintiffs, members and former officers of Local 2112 of the defendant International Association of Machinists, appeal from a judgment entered in the United States District Court for the Western District of New York dismissing their complaint in an action to redress alleged violations of Sections 101 (a) (2) and 501(a) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 411(a) (2) and 501(a), and to recover for defendants' negligence and breach of contract. We find no error and affirm the judgment.

Plaintiffs were formerly employed in North Tonawanda, New York by the Durez Plastics Division of the Hooker Chemical Corporation. In October of 1960 a dispute arose concerning the return of three foremen to the bargaining unit at a time when other union members were laid off. The complaint alleges that a representative of the defendant International Association of Machinists advised plaintiffs' local to strike, assuring the members that the International would support them despite the existence of a no-strike clause in the union's collective bargaining agreement with Durez. The ensuing strike, involving approximately 600 employees, ended after three days when the International advised the strikers to return to work. Twenty-seven employees, including the plaintiffs, were discharged by the company for participating in the strike.

The question of the propriety of the discharges was submitted to an arbitration board which directed that certain of the strike participants be reinstated but upheld the discharge of the plaintiffs.

The plaintiffs claimed to have discovered that one of the arbitrators on the tripartite arbitration panel was biased against them and sought to have the award vacated. Since under New York law only a party to the arbitration may attack the award (see New York Civil Practice Act § 1462, now Civil Practice Law and Rules § 7511; In re Soto, 7 N.Y.2d 397, 198 N.Y.S.2d 282, 165 N.E.

2d 855 (1960)),[1] the plaintiffs asked that defendant Benware, president of their local, institute a state proceeding to vacate the award. He refused and the plaintiffs allege that, acting pursuant to the union constitution, they obtained sufficient signatures on a petition to require the convening of a special meeting of the local to consider their request. Despite the petition Benware refused to call a special meeting.

To prevent the ninety day New York statute of limitations (CPLR § 7511) from running, plaintiffs brought an action to vacate the award in the state Supreme Court. At the next regular meeting of the local, which occurred more than ninety days after the arbitration award had been handed down, plaintiffs attempted to place before the union membership the question whether the union should support them in their state court attack on the award. They allege that Benware refused to allow Yanity, spokesman for the plaintiffs, to speak and thus frustrated plaintiffs' efforts to present their request to the membership. The state proceedings were dismissed for want of a proper party plaintiff and this action for damages was commenced.

Plaintiffs' primary contention is that their complaint states a claim for relief under Section 101(a) (2) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a) (2).[2]

Plaintiffs argue first that Benware's refusal to call a special meeting of the union membership when requested to do so in accordance with the union constitution violated their right under section 101(a) (2) "to meet and assemble freely with other members." We do not agree.

While the scope of this provision is not entirely clear, its immediate context and its legislative history establish that it was not intended to create a right to call meetings of the union membership. The remarks of Senator McClellan, who was the principal proponent of a bill of rights for union members, indicate that the right of assembly conferred by the statute was intended to enable union members to meet outside their regular union meetings for the purpose of discussing internal union affairs without fear of reprisal by union officials. 105 Cong.Rec. 5812 (daily ed. April 22 1959);[3] see 105 Cong.Rec. 14,366 (daily

1. The posture in which the case is presented makes it unnecessary for us to decide whether in fact New York law is applicable. See Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Black-Clawson Co. Inc. v. International Ass'n of Machinists, 313 F.2d 179 (2 Cir., 1962).

2. (2) Freedom of speech and assembly.
 Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its

legal or contractual obligations.
Section 412 provides:
 Civil action for infringement of rights; jurisdiction.
 Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

3. "That gives union members the right to assemble in groups, if they like, and to visit their neighbors and to discuss union affairs, and to say what they think, or perhaps discuss what should be done to straighten out union affairs, or perhaps discuss the promotion of a union movement, or perhaps a policy in which they believe. They would be able to do all of that without being punished for doing it, as is actually happening today."

ed. August 12, 1959) (remarks of Rep. Derwinski).

The language of the provision is more appropriately applicable to participation in such rump sessions than it is to a general right to hold meetings. Had Congress intended to establish a right to have meetings it would, presumably, either have specified certain periods within which meetings must be held and the circumstances under which special meetings might be called, or have given the Secretary of Labor the authority to issue regulations on the subject. For example, Title IV of the Act, dealing with the subject of elections, includes a provision directing that elections by local unions be held "not less often than once every three years" and that elections by national or international labor organizations be held "not less often than once every five years." 29 U.S.C. § 481(a) (b).

■ Further support for the view that the right to assemble does not have the broad content that plaintiffs ascribe to it may be found in the limited area to which the related right "to express any views, arguments, or opinions" guaranteed by Section 101(a) (2) is applicable. It is clear that the latter clause was intended only to safeguard the right of free speech outside union meetings, both because a separate clause of Section 101 (a) (2) defines and limits the right of free speech at union meetings, and because Senator Kuchel, whose amended version of the bill of rights is embodied in section 101 of the Act, and Senator McClellan agreed that this was the purpose of the clause. 105 Cong.Rec. 6021 (daily ed. April 25, 1959). There is no

indication that the right of assembly was intended to be broader in scope.

■ We conclude, therefore, that the failure to hold a special meeting in the circumstances alleged does not give rise to a federal claim. Congress made clear in the 1959 Act that certain matters were to be left subject to state law (see, e. g., 29 U.S.C. §§ 413, 523(a)) and this is apparently one of them.

■ Plaintiffs next contend that the refusal to allow Yanity to bring before the union meeting their request that the union seek to vacate the arbitration award violated their right under Section 101(a) (2) "to express at meetings of the labor organization [their] views * * * upon any business properly before the meeting." We need not decide the extent to which this provision creates a federal right to bring any appropriate business before a union meeting and have a vote upon it. Even assuming that plaintiffs could have persuaded their fellow union members to prosecute this claim in the state court, the meeting occurred after the ninety day period for vacating the award had expired and plaintiffs have not shown that they would have been able to avoid the statute of limitations bar even if the union had belatedly determined to attack the award. The connection between defendant's alleged wrongful act and the injury to plaintiffs is therefore speculative and too remote as a matter of law to permit an award of damages.

Plaintiffs' other claims · may be dealt with summarily.

■ They argue that the International Union violated its fiduciary obligation under Section 501(a) of the Act, 29 U. S.C. § 501(a),[4] by inducing them to par-

4. § 501. Fiduciary responsibility of officers of labor organizations.
 (a) Duties of officers; exculpatory provisions and resolutions void.
 The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties

ticipate in the strike against Durez. However, we have held that Section 501 (a) "applies to fiduciary responsibility with respect to the money and property of the union and that it is not a catch-all provision under which union officials can be sued on any ground of misconduct with which the plaintiffs choose to charge them." Gurton v. Arons, 339 F. 2d 371 (2d Cir. 1964) (footnote omitted). In any event, plaintiffs' claim is foreclosed by their failure to comply with the procedural requirements of Section 501(b).[5]

 Since all of plaintiffs' federal claims were properly dismissed at the pleading stage, the district court did not err by refusing to hear their nonfederal claims. See, e. g., United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct.

1130, 16 L.Ed.2d 218 (1966); Massachusetts Universalist Convention v. Hildreth & Rogers Co., 183 F.2d 497, 501 (1st Cir. 1950) citing Strachman v. Palmer, 177 F.2d 427, 431–34 (1st Cir. 1949) (concurring opinion); Note, The Evolution and Scope of the Doctrine of Pendent Jurisdiction in the Federal Courts, 62 Colum.L.Rev. 1018, 1025–26 (1962).[6]

The judgment dismissing plaintiffs' complaint is affirmed.

LUMBARD, Chief Judge (dissenting).

I dissent. In my opinion, both of plaintiffs' claims under the Bill of Rights, section 101, of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 73 Stat. 522 (1959), 29 U.S.C. § 411, are legally sufficient.

and from holding or acquiring any pecuniary or personal interest which conflicts with the interest of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

5. (b) Violation of duties; action by member after refusal or failure by labor organization to commence proceedings; jurisdiction; leave of court; counsel fees and expenses.

When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appro-

priate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

6. Four years after the commencement of this action plaintiffs tendered a third amended complaint suggesting for the first time that defendants' actions may constitute a breach of their duty of fair representation under the National Labor Relations Act. See Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). It is not clear from the record whether the district court denied leave to file the amended complaint since the parties entered a stipulation dismissing the action shortly after the pleading was tendered. On this appeal plaintiffs do not contend that they have a claim under the National Labor Relations Act nor do they seek leave to file the amended complaint. A suggestion from the bench during oral argument of the possibility of recovery on the ground of fair representation was rejected. Any claim they may have had under the National Labor Relations Act has apparently been abandoned.

### I.

I believe that plaintiffs' allegation that defendants refused, in violation of the union constitution, to call a special meeting requested by a petition signed by the required number of members of the local for the purpose of considering an attempt to vacate the arbitration award as to plaintiffs states a claim upon which relief can be granted under section 101 (a) (2) of the LMRDA, 73 Stat. 522 (1959), 29 U.S.C. § 411(a) (2). This question, which is one of first impression, was apparently not explicitly considered either in the congressional debates leading to the enactment ofthe Bill of Rights of the LMRDA, which because of the circumstances of its introduction and adoption were very short,[1] or by commentators, who concentrated their attention upon the advisability of regulating admission and expulsion of members, elections, and trusteeships.[2] Absent any direct indication of congressional intent, we must determine whether section 101 (a) (2) confers a right to have held the meetings required by the union constitution and bylaws by considering the purpose of the Bill of Rights and the rights specifically protected by section 101(a) (2). This the majority, by inquiring only whether such a right is discussed in the sparse legislative history of the Bill of Rights or is safeguarded as explicitly as the right to speak at union meetings or to vote for union officers, has failed to do.

A basic purpose of the LMRDA, and particularly of its Bill of Rights, is to assure "full and active participation by the rank and file in the affairs of the union." American Federation of Musicians v. Wittstein, 379 U.S. 171, 182–183, 85 S.Ct. 300, 307, 13 L.Ed.2d 214 (1964). That this purpose comprehends guaranteeing the rights of union members to attempt to influence the actions and policies of their union to the full extent permitted by its constitution and bylaws is made clear by section 101(a) (1), 73 Stat. 522 (1959), 29 U.S.C. § 411 (a) (1), which assures each member of a labor organization

> "equal rights and privileges * * * to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

This broad reading of congressional purpose is supported by the meager legislative history of the Bill of Rights. For example, Senator McClellan declared when introducing it on the floor of the Senate, "I believe that if you would give to the individual members of the union the tools with which to do it, they would pretty well clean house themselves." 105 Cong.Rec. 5810 (daily ed. April 22, 1959), reprinted in 2 Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 1102 (1959) (hereafter Leg.Hist.).[3]

---

1. The Bill of Rights stems from an amendment introduced on the Senate floor by Senator McClellan, which was revised three days after its passage by a hastily drawn amendment introduced by Senator Kuchel, which was in turn embodied without relevant change in the Landrum-Griffin bill in the House, which could not be amended after its adoption in place of the House committee bill. See, e.g., Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich. L.Rev. 819, 831–42 (1960); Rothman, Legislative History of the "Bill of Rights" for Union Members, 45 Minn.L. Rev. 199 (1960).

2. See, e.g., Cox, The Role of Law in Preserving Union Democracy, 72 Harv.L. Rev. 609 (1959); Wellington, Union Democracy and Fair Representation: Federal Responsibility in a Federal System, 67 Yale L.J. 1327, 1328 (1958).

3. It is true that section 101(a) (1) as originally proposed by Senator McClellan, 105 Cong.Rec. 5810 (daily ed. April 22, 1959), 2 Leg.Hist. 1102, and as reported by the House committee, H.R. 8342, 86th Cong., 1st Sess., 1 Leg.Hist. 696, protect-

In view of the broad purpose of safeguarding union democracy which underlies the Bill of Rights, the majority's holding that section 101(a) (2) protects the right to speak at union meetings only if the union leadership chooses to hold the meetings required by the union's constitution and bylaws is anomalous. A union leadership can stifle attempts by members to influence union policy as effectively by refusing to hold required meetings as by refusing the floor to members of opposing views. This is especially true where prompt action at a special meeting is essential, as plaintiffs allege it was here. Only by construing the right, conferred by section 101(a) (2) upon each member of a labor organization,

"to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting,"

as presupposing and including the right to have such meetings held when required by the organization's constitution and bylaws can such obvious circumvention of the congressional purpose be prevented.

Such a construction would not, as the court below feared,

"sanction possible minority control or harassment and loss of the degree of safety afforded by internal union regulation to honest union officers who may technically violate such a provision in the union constitution in acting to safeguard majority interests."

Any such possibility may be avoided by quorum and notice requirements, which would seem clearly to be "reasonable rules" permitted by the proviso of section 101(a) (2). Nor would the requirement that the meetings mandated by a union's constitution and bylaws actually be held be difficult to apply, or involve federal courts in the technical niceties of union government. Whether a meeting was required by the union constitution or bylaws would generally be a much easier issue to determine than whether a member was improperly denied a chance to speak.[4] As against these considerations, the majority fails to suggest any reason why Congress should have wished to assure the right to speak at union meetings, but to leave the right to have meetings held at all to the uncertain protection of state law. In

---

ed *all* rights and privileges of union membership, and that the section as modified by the amendment introduced by Senator Kuchel, adopted by the Landrum-Griffin bill, and finally enacted limited its protection to certain specified rights, and did so advertently. See 105 Cong.Rec. 6022–23 (*daily ed. April 25, 1959*), 2 Leg.Hist. 1231–32 (remarks of Senator Kuchel). But the only reason that has been suggested for the adoption of this little-discussed limitation is a fear that section 101(a) (1) might otherwise hamstring unions in negotiating and in processing grievances. See Cox, supra note 1, at 832. Moreover, the rights protected by section 101(a) (1) as enacted cover every phase of a member's participation in the affairs of his union. Thus the limitation of the rights protected by section 101(a) (1) does not detract from the broad purpose of the Bill of Rights to safeguard the effectiveness of every aspect of union democracy.

4. The majority's holding, on the other hand, raises difficult problems of distinction. Under that holding, does a presiding officer at a union meeting violate section 101(a) (2) by deliberately limiting the agenda so as to prevent discussion of a particular issue? or by deliberately adjourning the meeting to prevent a member from speaking? Compare Scovile v. Watson, 338 F.2d 678 (7 Cir. 1964), cert. denied, 380 U.S. 963, 85 S.Ct. 1107, 14 L.Ed.2d 154 (1965). And how broadly are the union meetings which the majority holds are not protected by section 101(a) (2) defined? For example, under the majority's holding, could a local union lawfully seek to prevent dissident members from meeting to appeal to higher union bodies or to seek a charter for a new local? Compare Johnson v. Local 58, Int'l Bhd. of Elec. Workers, 181 F. Supp. 734 (E.D.Mich.1960).

particular, the majority does not suggest that the right to have union meetings held has been effectively protected by New York or any other state.[5]

For these reasons, I would hold that the plaintiffs' allegation that the defendants refused to call a special meeting required by the union constitution, if substantiated, would establish a violation of section 101(a) (2).

## II.

Plaintiffs' allegation that defendants refused to allow plaintiff Yanity to speak at the regular meeting in order to seek to persuade the local to join plaintiffs' action to vacate the arbitration award clearly states a claim upon which relief can be granted under section 101 (a) (2). Defendants argue that the complaint is insufficient because it does not specifically allege that the other plaintiffs were also prevented from speaking, or that plaintiffs' request was not in any manner presented to the meeting. The complaint is certainly sufficient under Fed.R.Civ.P. 8(a) (2), which requires only " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); see Nagler v. Admiral Corp., 248 F.2d 319, 322–325 (2 Cir. 1957). Defendants rely upon the holding of the Seventh Circuit in Scovile v. Watson, supra note 4, which seems to me clearly distinguishable even if correct on its facts. The plaintiff in that case failed to allege that the motion she was prevented from making was in order, while plaintiffs here have alleged that Yanity attempted to speak at the proper time for the presentation of new business and defendants have not alleged that plaintiffs' request could not have been acted on by the membership of the local.[6]

## III.

Defendants next contend that both claims under the LMRDA Bill of Rights must be dismissed because plaintiffs' complaint fails to allege that they exhausted all internal union remedies reasonably available within a four-month period. See Thompson v. New York Central R. Co., 250 F.Supp. 175 (S.D. N.Y.), aff'd on other grounds, 361 F.2d 137, 145 (2 Cir. 1966). However, defendants have failed to allege by answer or affidavit in the record that any such remedies existed. The burden of alleging the availability of unexhausted internal remedies in an action under the LMRDA should be upon the defendant, both because the imposition of a requirement of exhaustion of internal remedies is permitted only by a proviso to the act's general guarantee of the right to sue, section 101(a) (4), 73 Stat. 522 (1959), 29 U.S.C. § 411(a) (4), cf., e. g., FTC v. Morton Salt Co., 334 U.S. 37, 44–45, 68 S.Ct. 822, 92 L.Ed. 1196 (1948), and because the proviso states that a prospective plaintiff may be required to exhaust any "reasonable hearing procedures" available within four months, but does not require that meaningful remedies be made available. Therefore we cannot assume that any remedies existed.

5. State courts have upon a variety of grounds invalidated expulsions or other sanctions visited upon union members for attempting to speak at union meetings. See, e. g., Summers, Legal Limitations on Union Discipline, 64 Harv.L.Rev. 1049, 1069–71 (1951); Kovner, The Legal Protection of Civil Liberties Within Unions, 1948 Wis.L.Rev. 18. But no state case has been found which has affirmatively enforced the rights of members to have union meetings held and to speak at them, probably in part because many state courts will intervene in internal union affairs only to protect a "property right" of the plaintiff, such as union membership. See, e. g., Bires v. Barney, 203 Or. 117, 277 P.2d 751 (1954); Summers, supra at 1056–57.

6. Defendants have not contended, as the majority intimates, that sections 101(a) (1) and (2) permit a local union to prevent its membership from voting on an issue which the union constitution or by-laws require to be presented to the membership of the local. Any such contention would seem to flout the congressional purpose in enacting the Bill of Rights.

Even if defendants had alleged that internal remedies existed which plaintiffs failed to exhaust, they would not have been entitled to summary judgment. Exhaustion is not required where "conceded facts show a serious violation of a fundamental right," Libutti v. DiBrizzi, 337 F.2d 216, 219 (2 Cir. 1964), and defendants have not yet denied the allegation that they refused to call a special meeting required by the union constitution. Moreover, plaintiffs may not have been advised of the availability of internal remedies. See Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2 Cir.), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961). Or any available remedies may have been too cumbersome to serve as an effective review of the refusal to call a special meeting during the limited time available to plaintiffs, and may not have provided for an award of damages. See Summers, supra note 5, at 1088–89. Any such ineffectual remedies would not seem to constitute the "reasonable hearing procedures" required by the proviso of section 101(a) (4) which permits imposition of a requirement of exhaustion. Compare Vorenberg, Exhaustion of Intraunion Remedies, 2 Lab.L.J. 487, 490 (1951). For these reasons and other possible reasons, plaintiffs may well be entitled to relief despite their asserted failure to exhaust internal remedies.

## IV.

Finally, defendants argue that plaintiffs' claims under the LMRDA Bill of Rights are too speculative as a matter of law to permit an award of damages. This argument in effect seeks a summary judgment, which we should grant only with great caution, as the record does not show that summary judgment was sought below on this ground, at least as to the claim based upon the alleged failure to call a special meeting. See Fountain v. Filson, 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971 (1949).

Plaintiffs assert in their brief on appeal that both union members of the tripartite arbitration panel had sought to have plaintiff Hartung expelled from the union, and that one had threatened to "get" plaintiff Yanity. If, as seems clear in retrospect, federal law governed the validity of the arbitral award, see Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), it seems likely that the award could have been vacated at least if the union violated its duty of fair representation of the plaintiffs. Cf. Vaca v. Sipes, 386 U.S. 171, 183–195, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Hiller v. Liquor Salesmen's Union, 338 F.2d 778 (2 Cir. 1964). If New York law governed, I strongly doubt that the case which nearly a year after the rendition of the award in this case established the validity of tripartite arbitration under New York law, Astoria Medical Group v. Health Ins. Plan, 11 N.Y.2d 128, 227 N.Y.S.2d 401, 182 N.E.2d 85 (1962), would be extended to a case where the union arbitrator on a tripartite panel was biased against the member whose grievance was being arbitrated. Thus it cannot be held on this record that plaintiffs are foreclosed as a matter of law from recovering damages if their allegations are sustained.[7]

## V.

Since I would hold that plaintiffs' claims under the LMRDA Bill of Rights were improperly dismissed, I would allow the trial court to pass on whether to accept pendent jurisdiction over plain-

7. The Supreme Court held in Vaca v. Sipes, supra at 197, 87 S.Ct. at 920, that "damages attributable solely to the employer's breach of contract" may not be recovered from a union which has violated its duty of fair representation by refusing to arbitrate a grievance. Vaca v. Sipes also strongly suggests that even if the union refuses to seek to vacate an arbitral award, a member may have it vacated if the union violated its duty to him of fair representation. But neither of these considerations justifies summary judgment for defendants at this stage, if only because plaintiffs' action to vacate the arbitral award was in fact dismissed, under New York law, for failure to join the union as a party plaintiff.

tiffs' state claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 725–727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). I would also permit the trial court to determine in the first instance whether to permit an amended claim relying explicitly upon the duty of fair representation.

I agree with the majority that plaintiffs' claim of violation of the fiduciary duty imposed by section 501 of the LMRDA, 73 Stat. 535 (1959), 29 U.S.C. § 501, was properly dismissed, and that the court below lacked jurisdiction of plaintiffs' attempted class action.