Leslie BIRTHWRIGHT and Theodore
Smith, Plaintiffs,

v.

Samuel KARSCH, Individually and in his
capacity as President, Local 338, Retail,
Wholesale and Chain Food Store Em-
ployees Union, Defendant.

No. 75 Civ. 2310.

United States District Court,
S. D. New York.

April 28, 1976.

Gilbert A. Holmes, New York City, for
plaintiffs.

Rosenman, Colin, Freund, Lewis & Co-
hen, New York City, for defendant; Joseph
Zuckerman, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs purportedly commenced this ac-
tion under Title I of the Labor Manage-
ment Reporting and Disclosure Act,[1] seek-
ing in the main to challenge again the dis-
qualification of L. Joseph Overton from
holding office in Local 338 of the Retail,
Wholesale and Chain Food Store Employ-
ees' Union.

Overton, the business agent for the un-
ion, was convicted in April 1972 for conspir-
acy to violate and violation of 29 U.S.C.,
section 186, and was sentenced to a term of
imprisonment.[2] Thus he was automatically
barred from holding union office for five
years.[3] Local 338's Executive Board there-
upon suspended Overton from office, fol-
lowing which he and others instituted pro-
ceedings in the State Supreme Court seek-
ing to vacate the suspension and to compel
the union to reinstate him as its business
agent. The Supreme Court entered a judg-
ment permanently enjoining him from par-

1. 29 U.S.C. §§ 411–531.

2. *See United States v. Overton*, 470 F.2d 761
(2d Cir.), *cert. denied*, 411 U.S. 909, 93 S.Ct.
1528, 36 L.Ed.2d 200 (1973).

3. 29 U.S.C. § 504

ticipating in union affairs and barring him from holding any union office.

Despite Overton's statutory disqualification, attempts were made to continue him in office. One Joseph Estrada proposed Overton as a candidate for President of the Local in the June 1975 union election. Officials of the union refused to mail campaign literature supporting Overton's candidacy, whereupon Estrada brought suit in this court. Judge Werker upheld the refusal to mail the literature on the ground that Overton was ineligible to run for office in view of his conviction.[4]

Still undeterred, two other supporters of Overton, plaintiffs Birthwright and Smith, thereupon brought this action to enjoin the June 1975 union election until they could notify the general membership that Overton was included on the slate of candidates and to vacate the injunction entered in the aforementioned proceedings in the New York State Supreme Court.[5] This court, on May 31, 1975, denied plaintiffs' motion for a preliminary injunction enjoining the union election scheduled for June 4, 1975. Thereafter, on defendant's motion, the court granted summary judgment in favor of defendant on plaintiffs' first three claims, all of which centered about Overton's suspension from office and the union's refusal to permit Overton to run for office during the period of his statutory disqualification.

There remains for determination defendant's motion for summary judgment directed to plaintiffs' fourth claim. Here they allege that their rights as union members have been violated by defendant's failure to call an annual general meeting of the entire membership in the last six years but for one special meeting called to consider Overton's future as a union member or official. In May 1971, four years before the commencement of this action, the union constitution, which then provided for mandatory annual general membership meetings, was amended to provide that general membership meetings would "be called by the President or the Executive Board as the business of the Union may require." The affidavits submitted by officials of the union make clear that the lack of general membership meetings has in no way hampered the ability of union members generally, or these plaintiffs in particular, to participate fully and actively in union affairs. Plaintiffs themselves concede that meetings of union members on due notice with attendant publicity are held regularly on a borough by borough or division by division basis, and that members are free to attend a meeting for a borough or division other than the one in which they live or work and to express their views on all matters. Indeed, the Laub affidavit submitted by the union indicates that the union, which has grown substantially in size and scope over the years, shifted from general membership meetings to borough and division meetings to achieve greater democracy and to encourage greater participation in union affairs by members who might otherwise be forced to travel long distances to express their views and to cast their votes. Experience, according to Laub, has borne out the wisdom of the change and the objective of greater democratization has been realized.

Plaintiffs have not tendered a single evidentiary fact or a single instance to support any claim that the use of borough or division meetings has prevented them from expressing any view or participating in any decision before any segment of the union or in which the vote of the full union membership taken on a borough or division basis has been given less effect that if the vote had been taken at a single general membership meeting. It is significant that plaintiff Birthwright was a member of the Executive Committee when the 1971 amendment was effected; he not only acquiesced in the changed procedure, but of even greater sig-

---

4. *Estrada v. Karsch*, 75 Civ. 2030 (HFW) (S.D. N.Y. May 14, 1975).

5. Upon a challenge by Estrada to the June 1975 election filed with the United States Department of Labor, the Department, after investiga-

tion, determined that the Election Committee of the union had properly disqualified Overton from running for office and that no violation of law was disclosed in connection with that election.

nificance is that at no time did he request the President or Executive Committee to call a general membership meeting. The plain fact is that plaintiffs have not come forward with a shred of evidence to support their allegation that they have been deprived of a voice in union affairs or of any right as union members.[6] What they really complain of is that the union has not permitted them to thwart the clear statutory mandate which disqualifies Overton from serving as a union official for a five-year period following his conviction.

In this circumstance, the court need not consider whether the failure to call at least one general membership meeting per year violates any provision in the union's constitution. It is well-settled in this circuit and elsewhere that "[a]n action may not be brought under Section 102 of the LMRDA to enforce provisions of the union constitution . . . . It is only when . . . a claim is made that the constitution is being applied in such a way as to deprive the local members of their secured rights that the documents may be considered."[7] Here there has been no colorable showing that the failure to call an annual general membership meeting has deprived plaintiffs of any of the rights secured to them under 29 U.S.C., section 411. Accordingly, the court does not reach plaintiffs' claim—tenuous at best—that the amendment which did away with the requirement of an annual general membership meeting was enacted in a manner contrary to the union constitution.

Defendant's motion for summary judgment on plaintiffs' fourth claim is granted.

Judgment may be entered dismissing all four claims of the complaint.

---

6. This is not to imply that section 101 of the LMRDA would necessarily create a right to call general membership meetings if plaintiffs had come forward with facts to support their allegations. In *Yanity v. Benware*, 376 F.2d 197, 199 (2d Cir.), *cert. denied*, 389 U.S. 874, 88 S.Ct. 167, 19 L.Ed.2d 158 (1967), our Court of Appeals held that the right "to meet and assemble freely with other members" vouchsafed to union employees under section 101(a)(2) of the Act, 29 U.S.C., § 411(a)(2), "was not intended to create a right to call meetings of the union membership." *See also Blassie v. Poole*, 51 CCH Labor Cases ¶ 19,510 (E.D.Mo.1965).

7. *Navarro v. Gannon*, 385 F.2d 512, 516 n.6 (2d Cir. 1967), *cert. denied*, 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968). *See also Yanity v. Benware*, 376 F.2d 197 (2d Cir.), *cert. denied*, 389 U.S. 874, 88 S.Ct. 167, 19 L.Ed.2d 158 (1967); *Gurton v. Arons*, 339 F.2d 371, 374 (2d Cir. 1964) ("But the guaranty of the equal right to vote is surely not a general commission for the federal courts to review the constitution and by-laws of the union. As long as no claim is made that provisions of the constitution and by-laws are being applied in such a way as to deny equality in voting, there is nothing in Section 101 which authorizes consideration of those documents"); *Martire v. Laborers' Local Union 1058*, 410 F.2d 32, 36 (3d Cir. 1969); *Hughes v. Local No. 11, Int'l Ass'n of Ironworkers*, 287 F.2d 810, 818 (3d Cir.), *cert. denied*, 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32 (1961); *1199DC, Nat'l U. of Hosp. & Health Care Employees v. National Union of Hospital and Health Care Employees*, 394 F.Supp. 189, 191–92 (D.D.C.1975); *Keck v. Employees Ind. Ass'n*, 387 F.Supp. 241, 245–47 (E.D.Pa.1974); *Antal v. Budzanoski*, 320 F.Supp. 161, 165–66 (W.D.Pa.1970), modified sub nom. *Sabolsky v. Budzanoski*, 457 F.2d 1245 (3d Cir.), *cert. denied*, 409 U.S. 853, 93 S.Ct. 65, 34 L.Ed.2d 96 (1972); *Rothstein v. Manuti*, 235 F.Supp. 39, 47 (S.D.N.Y.1963).