Gary WADE, John Vamplew, and Robert Hyson, Plaintiffs,

v.

TEAMSTERS LOCAL 247, and George A. Wither, Secretary-Treasurer, Local 247, Defendants.

Civ. A. No. 81–70355.

United States District Court,
E.D. Michigan, S.D.

Dec. 22, 1981.

Ann Curry Thompson, Detroit, Mich., Michael Goldberg, Camden, N.J., for plaintiffs.

Donald J. Prebenda, Southfield, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

ANNA DIGGS TAYLOR, District Judge.

### I. INTRODUCTION

Plaintiffs, three members of the International Brotherhood of Teamsters, Local 247, filed this action on February 3, 1981, seeking to compel the defendant Local to hold monthly membership meetings, to enjoin the conduct of a referendum vote within the Local, and to require individual defendant George Wither (Secretary-Treasurer of the Local) to make an accounting of funds from the Local treasury which he spent in the conduct of that referendum.

The cause of action is based upon alleged violations of 29 U.S.C. § 411(a)(1) and § 411(a)(2) of the Labor Management Reporting and Disclosure Act (LMRDA), which are portions of the union members' "Bill of Rights"; an alleged breach of fiduciary duty by the individual defendant, in violation of 29 U.S.C. § 501; and an alleged breach of contract under Michigan common law.

This court denied plaintiffs' ex parte request for a temporary restraining order on the same day that the complaint was filed, which order would have aborted a referendum procedure initiated on January 23, 1981. The Local Union has since opened and tabulated the results of that referendum, which was conducted by mail. The vote was a survey to ascertain whether or not a meeting was desired by the membership to discuss certain bylaw amendments advanced by the plaintiffs some months previously.

Immediately following the commencement of this litigation, the parties began tentative settlement discussions. In deference to the possibility of amicable resolution, motions filed were not heard until September 16, 1981. At that time, the court granted plaintiffs' motion for leave to file the complaint, insofar as it made claims under 29 U.S.C. § 501(a), (plaintiffs having been compelled to seek that leave by

§ 501(b), which states that suits may be brought to secure relief when a union official has violated his fiduciary duties to the membership, but that "No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. . . .") This court found, in its bench opinion, that there was good cause shown for bringing the verified complaint against defendant Wither under § 501(a), and that the plaintiffs had fulfilled the prerequisite of asking the Local Union to bring this suit in its own name, *Dinko v. Wall,* 531 F.2d 68 (2d Cir. 1976). The Local's refusal to bring such suit, on request by hand-delivered letter of February 2, 1981, is clear, as is the Local Executive Board's unqualified support for and joinder in the actions taken by Secretary-Treasurer Wither that are the subject of this suit. Leave of court was not required, of course, to file the other claims of the complaint.

The court has proper federal question and pendent jurisdiction over all of plaintiffs' claims. Plaintiffs' request for injunctive relief as to the counting of the referendum ballots is now moot, as those tabulations were accomplished before the instant motions were presented. The challenge to the propriety of that referendum is properly before this court, however, as other relief remains available.

The parties filed cross-motions for summary judgment on June 19, 1981 and June 22, 1981. Oral argument was held for several hours on September 16, 1981, during the course of which the defendants withdrew their motion. For the reasons fully discussed below, plaintiffs' motion is now granted.

Plaintiffs are members in good standing of their union, and are active in the "Teamsters for a Democratic Union," a caucus within the Brotherhood of Teamsters which challenges internal union practices and policies which it believes to be undemocratic. Local 247 is described by its counsel as a "miscellaneous" unit, comprised of more than 5,000 members (more or less, depend-

ing on seasonal fluctuations) who are employed by about 700 companies in diverse industries including construction, law enforcement, transportation, steel production, sanitation disposal and others.

The crux of this lawsuit is the defendants' failure to hold regular monthly membership meetings for many years, their recent refusal to hold any meeting to vote on the merits of plaintiffs' proposed bylaws amendments, and the conduct of the referendum which defendants held, instead. These three claims are treated seriatum.

## II. MEMBERSHIP MEETINGS

■ Several issues are implicit in this facet of plaintiffs' motion for summary judgment and a finding in favor of plaintiffs on each leads to the next. They include: whether there are any factual disputes as to the nature of the regular meetings' activities which do take place within the Local; whether the undisputed make-up of those sessions constitutes "membership meetings" within the contemplation of the LMRDA, the Union's International Constitution or its Local Bylaws; whether the failure to hold actual "membership meetings" violates Title I or Title V of the LMRDA, or constitutes a breach of the contract between members and their union as set out in the constitution and bylaws; whether (with respect to the Title I claim alone), plaintiffs have exhausted the internal union remedies; and whether (with respect to the Title V claim alone) the plaintiffs have made a demand upon the union to resolve the alleged fiduciary breach by defendant Wither.

There is no genuine dispute about the nature of the sessions that the Local Union does conduct. The union hall is opened for free association on every first and third Monday of the month, with business agents available; and that is the extent of "meetings" held. Special meetings are called, from time to time, to elect officers and to vote on contract ratification. The pleadings before this court, and the sworn affidavits reveal very clearly that the bi-weekly "meetings" are gatherings whose sole pur-

pose is to permit the individual problems of union members to be presented for service. Business representatives and stewards make themselves available to individuals in order to discuss current or potential grievances. The body is not called to order to transact any common business; there is no opportunity to present or to enact resolutions, to reach a consensus on any matter; to recommend or compel action by the Local Executive Board, or to have input into actions by the International Union, and there is no formal agenda of any kind, nor are any minutes of the activity taken. Generally, five or six members attend each evening that such sessions are held.

Defendants have had ample time to refute plaintiffs' allegations concerning these "meetings," but have failed to do so, and indeed have conceded their character. Defendants have ignored the admonition of Federal Rule of Civil Procedure 56(c):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The only sworn documents that defendants have presented to this court virtually admit that there are no regular membership meetings within the Local. This state of record exposes defendants' protestations of the existence of factual disputes (made for the first time during oral argument, simultaneous with the withdrawal of their motion for summary judgment) as a post hoc effort to create disputes where none exist.

Defendants' affidavit is that of George Strandloff, a former Secretary-Treasurer of the Local Union, and states that membership meetings were held during the "first years" of his tenure in office, (which began in 1949), but were abandoned due to their burdensome length, and the "total chaos, bitter feelings, and on some instances, phys-

ical involvement between members" that grew from them. Mr. Strandloff states:

> ... experience taught us that our members were best served by a policy of [the union hall] remaining open on the evening of the 1st and 3rd Monday of each month. Since 1963 to the time of my retirement, I knew of no complaint ever being made concerning our method of conducting meetings or of servicing our members. We found that our members were much more pleased with the service they received and we were told by our members that they were appreciative that they did not have to listen to others monopolize and politicize their own causes instead of permitting active participation in the real problems confronting individual members.

This self-serving declaration does not refute the facts as presented by the plaintiffs, and in fact, supports them. The lament of the affiant, and of those members whose dissatisfactions with union meetings he purportedly is reflecting, could just as easily be made by members of our state legislatures, the United States Congress, and the legislative bodies of our municipalities. Defendants' justification for abandonment of the former practice of regular meetings is nothing more than mere convenience, at best. It is true that democracy may often be raucous, unwieldy, and easily dominated by those inclined to verbosity, but it is the hallmark of our society, and Congress has declared it to be the essence of lawful unionism as well.

The activities at the bi-weekly "meetings" are undisputed, and the next question is whether, as limited as they are, they still constitute "membership meetings." The nature of a "membership meeting" is not explicitly defined in the LMRDA or in the union documents, but the term is used, and the contexts point to the inescapable conclusion that the sessions sponsored by the defendants are not "membership meetings" at all.

The LMRDA provides, in the very first substantive sections of the Act, known as Title I:

Sec. 411. (a)(1) EQUAL RIGHTS—
Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, *to attend membership meetings*, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

Section 411. (a)(2) FREEDOM OF SPEECH AND ASSEMBLY—
Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and *to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting*, subject to the organization's established and reasonable rules pertaining to the conduct of meetings . . . (Emphasis added)

The defendants' International Constitution, adopted in its current version in 1976, states at Article 14:

Section 2(a). Membership meetings shall be general or special.

(1) *General membership meetings shall be held monthly at such place and time as shall be designated by the Local Union Executive Board*, subject to disapproval by the membership, except where otherwise approved by the General Executive Board. The General Executive Board shall establish such conditions relative to the holding of meetings as in its judgment it deems advisable. Membership meetings may be suspended during any three (3) months between June and October by action of the membership at a meeting after reasonable notice of the intention to vote upon such question.

(2) *Members in attendance at membership meetings shall have the right to express their views, arguments or opinions upon any business properly before the meeting*, subject to Local Union Bylaws and the rules and regulations adopted by the Local Union Executive Board pertaining to the conduct of meetings, but no member in exercising such rights shall evade or avoid his responsibility to the organization as an institution or engage in or instigate any conduct which would interfere with the Local Union's performance of its legal and contractual obligations.

(3) *The Local Union Executive Board is authorized to permit membership meetings to be held on a division, craft, place of employment or other similar basis as it shall consider appropriate considering the special needs of the organization so as to permit the membership to attend meetings and to express their views and otherwise exercise their rights as members.* There shall be no limitation on the right of any member to be heard at any such separate meeting provided herein on all matters which apply to the general membership, but such member shall be permitted to vote only at such separate division, craft or place of employment meeting to which he has been assigned . . .

(4) Any Local Union failing to comply with this Section during the twelve (12) month period immediately preceding application for benefits . . . shall not be entitled to any financial or other benefits from the International Union . . . *The General Executive Board may revoke the charter of any Local Union failing to comply with this Section.* (Emphasis added.)

It should be noted that the latter action or one very closely related to it, was taken in *Local 1, Broadcast Employees of IBT v. IBT*, 419 F.Supp. 263 (E.D.Pa.1976), and 461 F.Supp. 961, 99 LRRM 3357 (E.D.Pa.1978), reversed on other grounds, 614 F.2d 846 (3rd Cir. 1980), where a local was merged into another for its failure to conduct itself in comportment with Article 14.

The defendants' Local Union Bylaws, adopted in 1963, state at Section 18:

A. *Membership meetings shall be held on a division, or craft basis either at the Union Hall or at the place of employment or other similar basis so as to permit the*

*membership to exercise their rights as members.* There shall be no limitation on the right of any member to be heard at any such separate meeting provided herein on all matters which apply to the general membership, but such member shall be permitted to vote only at such separate division, craft or place of employment meeting to which he has been assigned . . .

(c) *Each meeting shall be conducted by the officers of the Local Union or by their designees and under the same procedures and rules as a General Membership meeting,* excepting only special meetings for limited purposes such as voting on contracts or strikes, handling of grievances, etc. . . .

(d) *Members in attendance at membership meetings shall have the right to express their views, arguments or opinions upon any business properly before the meeting* subject to these bylaws and the rules and regulations adopted by the Executive Board pertaining to the conduct of meetings . . . . (Emphasis added.)

And Section 19(F) of those same Bylaws guarantee membership rights, including:

(b) The right to attend membership meetings and to participate in the deliberations and voting upon the business of such meetings.

Read together, all of those provisions comprise a definition of "membership meetings" which requires provision to the membership of advance notice and of the agenda proposed by the chairman, conduct of the meetings by an officer elected by the membership, and transaction of all union business only by vote of a stated majority of a stated quorum of the membership, after opportunity to present resolutions to the body and to debate all resolutions from the floor. Those are the minimal requirements of a "membership meeting" in any democratic American institution, on which the statute, constitution, and Bylaws quoted *supra* appear implicitly to be founded.

Nothing less than genuine meetings will suffice to serve the purpose of LMRDA, which was drafted to eliminate union corruption and the influence of organized crime in labor relations. Congress was well aware that unions have determinative impact on the welfare of organized working people, and sought to ensure that they adhere to the same model of participatory democracy that our country envisioned at its birth, and that we still embrace. An implicit assumption behind the LMRDA's Bill of Rights (and the union's own documents) is that there will be a vehicle for that participation.

Plaintiffs have aptly directed the court's attention to the remarks of the late Senator Hubert Humphrey, made on the Senate floor during debate upon the LMRDA in 1959:

"I say to the union members, I know of no law that can protect you from mismanagement. There is only one way to protect democracy in government, in a union or in any other institution. That means the people had better take care of their business. If only 10 percent of union members attend meetings—and that is a good average—we can expect abuse of power . . . If union members really want unions which will be effective and will protect their interest, they had better get to the union meetings . . ." 105 Cong. Rec. 16433 (daily ed. September 3, 1959)

How much less democracy must result, and how much more potential for the abuse of power of which Senator Humphrey spoke, when there are no regular union meetings to "get to" at all. Therefore, we reach the question of whether the absence of regular membership meetings constitutes a violation of law.

## A. TITLE I

■ Courts have been confronted with allegations of LMRDA Title I violations, as regards membership meetings but, in much different contexts than the one here presented. For the most part, regular membership meetings must prevail in union locals in all industries, and litigation arises from demands that special meetings be held, *Yanity v. Benware,* 376 F.2d 197 (2d Cir. 1967), cert. den. 389 U.S. 874, 88 S.Ct.

167, 19 L.Ed.2d 158 (1967), or from disputes between a local union and its International about control over the meetings, *Navarro v. Gannon*, 266 F.Supp. 601 (S.D.N.Y.1967), aff'd 385 F.2d 512 (2d Cir. 1967), cert. den. 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968), reh. den. 390 U.S. 1046, 88 S.Ct. 1634, 20 L.Ed.2d 310 (1968), or from the conduct of votes taken at such meetings, *Scovile v. Watson*, 338 F.2d 678 (7th Cir. 1964), cert. den. 380 U.S. 963, 85 S.Ct. 1107, 14 L.Ed.2d 154 (1965), or from the exclusion of certain members from the meetings due to the imposition of internal union discipline or conviction of a crime, *Rosario v. Dolgen*, 441 F.Supp. 657 (S.D.N.Y.1977).

The courts have divided on the question whether Title I of LMRDA is violated by variations in the methodology of conducting union meetings. Few courts have addressed a factual situation in which regular meetings have been abandoned, completely. Plaintiffs have cited the court to a case in which litigation by union members resulted in a consent order to hold regular membership meetings, *Axler v. Transportation Workers of Philadelphia*, Case No. 30762 (E.D.Pa.1962), but a stipulation cannot assist this court in its resolution of a live dispute. A mid-level state court in Ohio has very clearly held that union members are entitled, by virtue of Title I of the LMRDA, to attend regular membership meetings, in *Bausman v. NCR Independent Union*, 74 LRRM 2950 (Ohio Court of Appeals, 1970), another case relied upon by plaintiffs. There, a member challenged his local union's plan to affiliate with an established international union, and specifically sought revocation of a vote in favor of affiliation. The court, while rejecting the procedural and substantive challenges to the vote and to the affiliation decision, granted relief to a group of intervenors in the litigation who complained of the local leadership's refusal to call monthly meetings. That refusal had begun after a particularly stormy meeting held during the height of the affiliation controversy, and had continued for nearly a year. The local union leadership felt awash in the controversy, and wished to institute a "cooling off

period." It described the cancellation of all membership meetings as an acceptable parliamentary delay tactic. The court disagreed, and found the cancellation to be a violation of the union constitution and of Title I of the LMRDA, and it enjoined the union officers from continued violations.

The only other decision on point was rendered in *Birthwright v. Karsch*, 413 F.Supp. 119, (S.D.N.Y.1976), which rejected a Title I claim based on failure to call an annual general membership meeting for six consecutive years. That decision is distinguishable from the one at hand, for several reasons, however. Both plaintiff and defendant in *Birthwright* acknowledged that regular membership meetings were continuing to be held on a divisional basis, and the court explicitly held that there was no evidence of plaintiffs having been prevented from "expressing any view or participating in any decision before any segment of the union," 413 F.Supp. at 120. Here, plaintiffs' affidavits reveal the loss of their right to self-expression most eloquently, and oral argument revealed that membership input into an early October, 1981, decision by the International Union on whether to re-open negotiations on the Master Freight Contract had been absolutely non-existent. Moreover, a close reading indicates that the New York District Court's discussion of Title I rights were mere dicta, since the court found that no free speech rights actually had been impaired, and declined to consider whether, in other circumstances, failure to call membership meetings could be actionable under the LMRDA. In the context of this litigation, where there has been no general membership meeting for many years, the court finds the members' rights (and specifically plaintiffs' rights) to participate fully in Local 247's affairs have not only been hampered, they have been eradicated, and that their rights as members have been subordinated to the whims of the leadership. That state of affairs cannot be reconciled with the LMRDA's Bill of Rights.

Defendants have argued that even if their actions do constitute a violation of

Title I, the plaintiffs cannot prevail since they have failed to exhaust internal union remedies, as required by 29 U.S.C. § 411(a)(4). That section preserves the right of union members to sue inviolate, with the following proviso:

That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization before instituting legal or administrative proceedings against such organizations or any officer thereof . . .

The uncontroverted facts of this case are that plaintiff, Gary Wade, filed internal union charges against the Local 247 Executive Board on June 19, 1980. Those charges were filed with the Michigan Teamsters Joint Council No. 43, and alleged that the Executive Board was violating the International Constitution by failing to hold monthly membership meetings. The Joint Council dismissed the charges on December 16, 1980, in a written opinion (relying upon "custom" to justify the self-evident abrogation of the union constitution). That dismissal was appealed to the International Brotherhood of Teamsters General Executive Board on December 31, 1980. That body has not acted on the appeal, up to this very date. Obviously, plaintiffs have vigorously pursued their complaints within the union; they did so for eight months prior to bringing this suit, and ten months thereafter; for a total now of eighteen months, more than four times the endurance required by the Act. Indeed, the statutory four months expired before plaintiffs even got a response from the first level of their internal appeal. Sufficient exhaustion of internal remedies under § 411(a)(4) has occurred.

## B. BREACH OF CONTRACT

Plaintiffs assert that the refusal to hold membership meetings constitutes a breach of contract; the contract breached being the International Constitution and the Local Bylaws. The claim is cognizable, if at all, by virtue of this court's pendent jurisdiction.

A union constitution or bylaws may, in certain circumstances, represent an enforceable contract between the labor organization and its members, but plaintiffs' claim in this case is ill-founded.

Plaintiffs rely upon two Michigan Supreme Court decisions in support of their depiction of union constitutions and bylaws as contracts; but those decisions pre-date the LMRDA, and its rather comprehensive scheme for internal union management. Plaintiffs reference to *Cleveland Orchestra Committee v. Cleveland Federation of Musicians*, 303 F.2d 229 (6th Cir. 1962), is inapposite, as relief was granted in that case solely on the basis of Title I violations.

 It is clear in this Circuit, that violation of a union constitution does not make out a claim under § 301 of the Labor Management Relations Act (29 U.S.C. § 185). In *Trail v. International Brotherhood of Teamsters*, 542 F.2d 961 (6th Cir. 1976), Judge Edwards held that no § 301 action is permissible where union members sue their union for acting undemocratically, in violation of the union constitution. The reasoning was that LMRDA provides ample avenues for resolution of intra-union disputes, and that the federal courts should not seek other authority to interfere in purely internal union affairs, (as opposed to disputes which impact on labor-management relations), than specifically provided therein. This court has recognized that principle, *Cehaich v. UAW*, 496 F.Supp. 912 (E.D. Mich.1980), while acknowledging that the existence of a breach of contract claim under state law is clouded. At least one district court within this circuit has permitted such a claim, *Murphy v. Operating Engineers, Local 18*, 99 LRRM 2074 (N.D.Ohio 1978), albeit with very little discussion and in reliance on an Ohio statute, and not Michigan common law. The reasoning of *Trail*, however would appear to apply with like force to a claim for common law breach of contract. The LMRDA provides opportunities to redress internal union autocracy, through both Title I, Title IV (regarding elections) and Title V (regarding fiduciary duties), and state common law does not

have a proper place, as an additional layer imposed upon that unified scheme, based upon policies quite different from those which induced the Congressional Act.

## C. TITLE V

██ Title V of the LMRDA, 29 U.S.C. § 501 et seq., sets out the fiduciary responsibilities of union officers to the organization and its members. Only union officials, and not labor organizations themselves can be sued under this section. Although it is generally regarded as a section designed to prevent fiscal mismanagement and fraud, it contains non-financial aspects (including provisions that Communist Party members or convicted persons cannot serve as union officers) and has been interpreted to impose a general fiduciary duty upon union officers, above and beyond monetary involvement.

That interpretation has been made by several Circuits. In *BRAC Lodge 1380 v. Dennis*, 625 F.2d 819 (9th Cir. 1980), the court recognized the existence of a § 501 cause of action for a union official's denial of access to union membership lists. In *Stelling v. IBEW Local 1547*, 587 F.2d 1379 (9th Cir. 1978), cert. denied, *Darby v. IBEW*, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979), reh. den., *Darby v. IBEW*, 444 U.S. 889, 100 S.Ct. 192, 62 L.Ed.2d 124 (1979), a § 501 suit was maintained against union officials for entering into an agreement with a national employer's association without membership approval. In *Johnson v. Nelson*, 325 F.2d 646 (8th Cir. 1963), the court found § 501 liability for refusal to pay union dissidents' legal costs incurred in litigation challenging intra-union discipline, and in *Sabolsky v. Budzanoski*, 457 F.2d 1245 (3rd Cir. 1972), the court permitted union members to sue their officials to force disbanding of locals of less than 10 working members. The D.C. Circuit has followed this trend, at least by implication, in *Cefalo v. Moffett*, 449 F.2d 1193 (1971). These circuits have been joined by district courts in Virginia—*Richardson v. National Post Office Mail Handlers*, 442 F.Supp. 193 (1977), regarding

general allegations of mismanagement, secrecy, failure to disclose information and to process grievances; and in the District of Columbia—*Moschetta v. Cross*, 48 LRRM 2669 (1961), in which a § 501 action was brought to remedy union officers' refusal to arrange for a special convention, in violation of union constitutional provisions. These courts have given § 501 a broad reading, and refused to limit its remedies to instances of embezzlement or other unlawful appropriation of union funds. Many of them have quoted the following excerpt from the legislative history, taken from the House Report analyzing what was to become the final version of the LMRDA:

> We affirm that the committee bill is broader and stronger than the provisions of S. 1555. S. 1555 applied the fiduciary principle to union officials only in their handling of "money or other property" (See S. 1555, Sec. 610) apparently leaving other questions to the common law of the several States. Although the common law covers the matter, we considered it important to write the fiduciary principle explicitly into Federal labor legislation. Accordingly, the committee bill extends the fiduciary principle to all the activities of union officials and other union agents or representatives. (1959 U.S. Code Congressional and Administrative News pp. 2318, 2424 and 2479–80)

This court holds, in keeping with the broader interpretation of Title V which this court adopts, that plaintiffs' claim of violation of the union constitution by failure to hold monthly membership meetings is actionable under § 501, and that defendant George Wither is individually liable for the breach of his fiduciary duty. He undisputedly took the principal part in the denial of plaintiffs' democratic rights, and thereby violated his duty to all of the membership. As plaintiffs correctly argue, all of the Local Union officials who so participated are jointly and severally liable for their actions taken as a body, *Pignotti v. Local 3 Sheetmetal Workers*, 477 F.2d 825 (8th Cir., 1973), cert. den. 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973), although plaintiffs have not named the other union officials

who acted in concert with defendant Wither as defendants.

However, liability against defendant Wither cannot be found unless plaintiffs have satisfied the procedural prerequisite of Title V, namely that a potential litigant may bring suit against an officer only after "the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so" (29 U.S.C. § 501(b)). The unrefuted contentions of the plaintiffs are that the Executive Board was hand-delivered a letter, making such a request, on February 2, 1981. That same day they were informed that defendant Wither himself would be the sole person to make the decision as to whether any relief would be granted, and a phone conversation between plaintiffs and defendants ended angrily, with defendant Wither hanging up on the plaintiff. The plaintiffs had raised the matter of monthly membership meetings to the union in several other manners preceding this suit, including by filing the internal union charges discussed above. It was more than obvious that the Executive Board as a whole endorsed all actions taken by defendant Wither, and that no relief would be forthcoming from them. In this case, plaintiffs have attempted all avenues of redress, including the § 501(b) request to sue, and have done so in good faith. The procedural prerequisites of that section are designed to encourage unions to "clean house" themselves—when one of their officials is accused of wrongdoing, either by resolving the matter without litigation, or by using their superior resources to bring suit, in the stead of an aggrieved member or members.

### D. RELIEF

■ The defendants are ordered and directed to conduct regular general membership meetings at the Local Hall, once each month on the same appointed day, commencing with the month of February, 1982. At least seven days' advance notice of the meeting is to be delivered by mail to each Local 247 member, and posted at the union hall, as well as at the work places of the membership, in each case where the local routinely is permitted to post notices relating to official union business. As the International Constitution permits, such meetings may be held on a craft or divisional basis, with members in related industries, meeting together. The choice of comprehensive or divisional meetings is left to the Local Executive Board, and will be determined by this court only if there is a continued failure to honor the entitlement of every member to a genuine meeting. The meetings are to have set agendas, shall be attended and conducted by the elected local officers, be governed by Roberts Rules of Order where the Bylaws do not govern, and make reasonable allowance for free discussion of matters affecting union policy, including collective bargaining, financial obligations of members, disciplinary matters, and other subjects normally a part of membership meetings of voluntary associations.

No damages are awarded for the violations of plaintiffs' rights that have occurred to date. Plaintiffs have not suffered financial hardship, or loss of work, from the violations that have occurred. They have, however, suffered an invaluable and irreparable loss of democratic rights, and the litigation has been pursued most vigorously with an eye toward equitable relief. The court has never been presented with an estimation of what appropriate money damages would be, and awards none. An award of attorney fees, under the authority of *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), will be considered upon submission of a petition and brief in support thereof.

### III. PROPOSED BYLAW AMENDMENTS

Plaintiffs' complaint asserts that the union's refusal to hold a membership meeting to consider and vote upon their proposed bylaw amendments constitutes a violation of Title I of the LMRDA, and of the common law, and also alleges that defendant Wither's participation in that refusal consti-

tutes a violation of Title V of the Act. The proposals drafted by the plaintiffs, and presented to the Executive Board of Local 247 on July 7, 1980, together with 73 supporting signatures of other members, would have mandated election of union business agents, union shop stewards, rank and file negotiating committees, membership control over officers' salaries, and future amendment of the bylaws by majority (instead of the current two-thirds) vote.

Instead of holding a meeting (as the bylaws required), the Board sent a letter to the full membership, on January 23, 1981, which asked them to indicate whether they wished a meeting to be convened to discuss the proposals. That three-page letter and ballot presented a grim picture of the harm that would befall the union should any of plaintiffs' proposals be adopted. There is no dispute of fact as to the content of the letter, or that it was the sole communication of defendants to the membership, or that no meeting to discuss the merits of the proposals was ever held.

On its face, the letter is extremely biased against adoption of the proposals. It is vehement in its recommendation that no meeting to consider their merits is required. The letter stated that the Board had no intent of submitting the proposals to a membership meeting in the absence of a majority showing from the membership that they wished to have one. The letter did not include, and the mailing did not enclose, the language of the proposals themselves. Ballots were to be returned within twelve days of the date of the letter. The results of the balloting were announced on February 6, 1981, and revealed that 1,175 members voted against convening a meeting, 357 voted in favor, 40 ballots were returned by the post office, and 1 was invalidated.

Defendants do not allege that there are any factual disputes that preclude the entry of summary judgment on this claim. Their defense is that plaintiffs have failed to exhaust internal union remedies, and thus are not entitled to relief as a matter of law. Defendants' brief, and their oral argument

is not at all clear on the scope of this defense, but it is a defense to the Title I claim alone, since the exhaustion requirement of which they speak is found at 29 U.S.C. § 411(a)(4). It is not relevant to the Title V claim against defendant Wither or the breach of contract claim.

## A. TITLE I

█ Plaintiffs must overcome a procedural hurdle before this court may reach the merits of their claim that the refusal to hold a membership meeting to consider their bylaws proposals violated Title I of the LMRDA. The language of § 411(a)(4) is reproduced in this opinion, *infra*.

This court finds that plaintiffs' internal appeal to the union to hold regular monthly membership meetings subsumed the claim to hold a meeting to consider the proposals. It was the absence of regular meetings which forced plaintiffs to make a special request for one, and the internal pursuit of the former issue suffices to satisfy the exhaustion requirement as to the latter.

Even were the two issues considered to be separate, the plaintiffs' argument of futility is accepted by the court. The Local Union officials were the crux of the problem addressed by this litigation, in all of its ramifications. Appeals to them, to institute democratic proceedings within the union, fell on deaf ears and brought stiff-necked opposition. The Area Council's affirmance of the Local's actions was a whitewash of complex issues, lacking in rational support, and the International Executive Board's inaction a dead-end to further consideration.

In such circumstances, plaintiffs cannot be expected to engage in exercises in futility, *Verville v. International Association of Machinists*, 520 F.2d 615 (6th Cir. 1975), *Geddes v. Chrysler*, 608 F.2d 261 (6th Cir. 1979). The law does not require the doing of a useless act. Actual exhaustion of the internal union remedies is therefore excused here, although the exhaustion on the issue of regular monthly membership meetings had given the union sufficient opportunity to resolve the problem and avoid this lawsuit.

Section 411(a)(1) of the LMRDA guarantees the right to vote upon union matters, and the substitution for an open discussion and vote of the biased ballot on whether to hold a meeting at all, abridges those guarantees, *Trail v. International Brotherhood of Teamsters*, 542 F.2d 961 (6th Cir., 1976), *BRAC Lodge 1380 v. Dennis*, 625 F.2d 819 (9th Cir., 1980). The right to participate in votes on adoption of bylaw amendments is explicitly guaranteed to the members of Local 247 by their own bylaws, at Section 28(A):

> Proposed amendments to the Bylaws shall be submitted to a general membership meeting by resolution of the Local Executive Board, acting on petition of members or on behalf of itself.

Defendants cannot contend that "shall" is used in any sense other than its usual mandatory meaning. The Bylaws are nonambiguous, and they demand that votes on Bylaw amendments take place at a meeting, regardless of the Executive Board's desire to call one, and regardless of the Executive Board's support for, or opposition to, the content of the proposals. It would not have been permissible for the Board to order a vote by mail·on the merits of the proposals, and the unusual device employed is one step removed from that, making it even less defensible under the unequivocal wording of the Bylaw provision. The Board's inventiveness was disastrous to the rights of the amendments' proponents, and directly contrary to their own charter. Section 28(A) of the Bylaws implements the spirit of § 411(a)(1) and § 411(a)(2), and both of those LMRDA provisions were violated by the Board's actions.

### B. BREACH OF CONTRACT

Plaintiffs also claim that the vote-by-mail procedure constituted a breach of the contract between the union and its membership, as it was a patent contradiction of Bylaw Section 28(A). This is true, but for the reasons stated above, that breach is actionable under the LMRDA alone, and summary judgment is denied to the plaintiffs upon this ground, because judicial intrusions into internal union affairs should be limited to those contemplated by the comprehensive Congressional scheme.

### C. TITLE V

Defendant Wither, along with the other members of the Local Executive Board, conducted the mail-in vote, and that flagrant denigration of members' participatory rights also constitutes a breach of his fiduciary duty to the union and its members. Money damages are not appropriate under the conditions of this litigation, however, and the plaintiffs' claim under Title V is merely an alternative basis for entry of summary judgment on the claim regarding the voting procedure.

### D. RELIEF

The results of the mail-in vote are a nullity, and defendants are ordered to include provisions in the agenda of an upcoming monthly membership meeting (or meetings, if they are held severally, in the different crafts) for consideration of plaintiffs' proposals within the 90 days following entry of this order, on due notice. All members in attendance at such meetings, who are members in good standing in the Local, may discuss and vote on the proposals, after plaintiffs are given the opportunity to argue their merits. Adoption will be by two-thirds of the membership.

## IV. EXPENDITURE OF UNION FUNDS

Plaintiffs bring one claim against defendant George Wither individually, under 29 U.S.C. § 501, for the use of money from the union treasury to pay for the January 23, 1981 letter and the conduct of the referendum generally, as well as the authorization of union officers and business agents to campaign for a "no" vote, on union time.

Defendant has not disputed that he authorized those expenditures, so there is no factual dispute barring the entry of summary judgment. Plaintiffs have satisfied the procedural prerequisites of § 501(b), as previously found.

The expenditure of union funds to finance an unlawful denial of the memberships' democratic rights is most certainly a breach of Mr. Wither's fiduciary duty. The LMRDA's Bill of Rights is for the protection of all members in the local, and they all suffer when those rights are imperiled. Defendant Wither is hereby ordered to reimburse the union treasury for all such monies spent, after he renders an accounting to the plaintiff and to this court of those monies. The accounting shall be filed within the next thirty (30) days from the date of this Opinion.

## V. CONCLUSION

Summary judgment shall enter in favor of the plaintiffs as to the claims that failure to hold regular membership meetings violates Title I and Title V of the LMRDA, the claims that the failure to hold a meeting to vote on the Bylaw proposals violated the same statutes, and the claim that defendant Wither's expenditure of union funds to finance the mail-in vote violated his fiduciary duty under Title V. Summary judgment is denied to the plaintiffs, and granted to the defendants on the claims that any of the action taken by the defendants constituted a breach of contract under Michigan common law.

IT IS SO ORDERED.