**Robert GRANT and Troy Finn, Plaintiffs-Appellants,**

**v.**

**CHICAGO TRUCK DRIVERS, HELPERS & WAREHOUSE WORKERS, UNION, et al., Defendants-Appellees.**

**No. 85–3019.**

United States Court of Appeals, Seventh Circuit.

Argued June 13, 1986.
Decided Nov. 17, 1986.

Michael J. Goldberg, Camden, N.J., for plaintiffs-appellants.

Paul L. Glover, Chicago, Ill., for defendants-appellees.

Before CUMMINGS and POSNER, Circuit Judges, and GORDON, Senior District Judge.*

CUMMINGS, Circuit Judge.

This case comes to us on appeal following the district court's grant of summary judgment in favor of defendants Chicago Truck Drivers Union ("the Union"), the executive director of the Union, and individual officers of the Union who also serve on the Union's Board of Governors, and against plaintiffs Robert Grant and Troy Finn, two members of the Union.[1] This appeal requires us to determine whether the failure to have general membership meetings violates Title I of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401 *et seq.*, as claimed by plaintiffs. For the reasons set forth below, we affirm the judgment of the district court determining that the LMRDA had not been violated.

---

* The Honorable Myron L. Gordon, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

1. Another Union member, Jerry Picardi, was a plaintiff below but sought to be dropped from the litigation before the district court rendered its opinion (reproduced in Plaintiffs' Br. App. 1–8). On March 7, 1984, the district court granted Picardi's motion to dismiss himself voluntarily as a plaintiff.

## I

The Union's constitution provides that membership meetings shall be called whenever the Executive Director or the Board of Governors so designates. The constitution sets forth two types of permissible membership meetings: general meetings and sectional meetings. General meetings have a quorum requirement of 25% of the members eligible to vote, and there is no limitation on the type of business that may be transacted at general meetings. Sectional meetings do not have a quorum requirement but are limited in that members at these meetings cannot transact business other than relating to the negotiation and enforcement of collective bargaining agreements. Sectional meetings are comprised of members at a particular place of employment or within a particular craft, class, or division of work. Significantly, the constitution does not require either type of meeting to be held within any specified interval of time.

The record indicates that the Union has not held a general meeting since December 10, 1972. There have, however, been sectional meetings held at unspecified intervals. Except for four large meetings in 1978, each sectional meeting has been open only to members working for a single employer or a small number of employers. The percentage of the membership invited to attend these sectional meetings in particular years is as follows:

| Year | % Membership invited to attend |
| --- | --- |
| 1979 | 2% |
| 1980 | 10% |
| 1981 | 10% |
| 1983 | 22% |

No agendas are announced in advance of the sectional meetings and minutes are frequently not taken.

Before filing the instant suit, plaintiffs took several steps to attempt to have the Union hold a general meeting. Grant sent a letter to the Board of Governors on November 16, 1982, and then a second letter on February 23, 1983, requesting the Board to adopt a policy of holding regularly scheduled general meetings. The Board unanimously rejected the latter request on March 29, 1983. Grant then requested that the Board propose two constitutional amendments: one amendment that would require monthly general membership meetings, and a second amendment that would lower the present quorum requirement of 25% of the members eligible to vote. The Board refused to entertain the proposed amendments. Plaintiffs then filed the instant suit on August 19, 1983.

## II

Plaintiffs' main contention is that the LMRDA creates a right to regular general membership meetings. The "bill of rights" for members of labor organizations, set out in 29 U.S.C. § 411(a),[2] provides in pertinent part that:

(1) Every member of a labor organization shall have equal rights and privileges within such organization ... to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws. (2) Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings....

The analysis of a claim under Section 411(a) consists of two parts. The first part is whether the union rule or policy infringes upon a right protected by the statute. If so, only then is the second part of the inquiry, which asks if the rule is reasonable, reached. *United Steelworkers of America v. Sadlowski,* 457 U.S. 102, 111,

---

**2.** 29 U.S.C. § 411(a) contains Section 101(a) of the Act. For convenience, this opinion refers to that provision as Section 411(a), as denominated in the Code.

102 S.Ct. 2339, 2345, 72 L.Ed.2d 707; *McGinnis v. Teamsters Local 710*, 774 F.2d 196, 200 (7th Cir.1985), certiorari denied, —— U.S. ——, 106 S.Ct. 1638, 90 L.Ed.2d 184.

It is well established that the plain language of a statute is important, and often the best, evidence of its meaning. *Board of Governors of the Fed. Reserve Sys. v. Dimension Financial Corp.*, —— U.S. ——, 106 S.Ct. 681, 688–689, 88 L.Ed.2d 691; *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766. This maxim has been applied in construing other sections of the LMRDA. *Marshall v. Local Union 20, Int'l Bhd. of Teamsters*, 611 F.2d 645, 652 (6th Cir.1979).

■ Plaintiffs' contention runs counter to the plain language of both of the above-quoted subsections of Section 411(a). Subsection (a)(1) speaks to the equal treatment of all members, if and when meetings are held, but it does not require labor organizations to hold general membership meetings. Its focus is on discrimination, and not on the equal denial of the benefits that accompany the holding of membership meetings. See *McGinnis v. Teamsters Local 710*, 774 F.2d at 199; *American Postal Workers Union, Local 6885 v. American Postal Workers Union*, 665 F.2d 1096, 1101 (D.C. Cir.1981); cf. *Christopher v. Safeway Stores*, 644 F.2d 467, 470 (5th Cir.1981) (prohibits an unequal denial of all members of the right to vote, but only because the union constitution created such a right). Subsection (a)(2) merely gives members the right to assemble freely and meet with other members. This prohibits a union from preventing its members from assembling with one another other than at membership meetings; it also does not create a right to meetings at the expense of the union. The "right to meet and assemble" in the first clause of subsection (a)(2) safeguards the right to meet and the right to speak freely outside of union membership meetings; this is underscored by the subsequent clause of this subsection which delineates only the right to speak freely at union meetings. *Yanity v. Benware*, 376 F.2d 197, 200 (2d Cir.1967). Nothing in the language of this statute creates a substantive right on behalf of members to attend regularly scheduled general meetings of union members.

■ The legislative history similarly does not support plaintiffs' contention. In commenting on subsection (a)(2), Senator McClellan, the principal proponent of the statute, stated:

> That [provision] gives union members the right to assemble in groups, if they like, and to visit their neighbors and to discuss union affairs, and say what they think, or perhaps discuss what should be done to straighten out union affairs, or perhaps discuss the promotion of a union movement, or perhaps a policy in which they believe. They would be able to do all of that without being punished for doing it, as is actually happening today.

105 Cong.Rec. S5812 (daily ed. Apr. 22, 1959), reprinted in, 2 NLRB, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 1104 (1959). This shows that subsection (a)(2) does not create any entitlement to regularly scheduled general union membership meetings, but rather safeguards the rights of members to assemble and speak freely outside of union meetings. See also 105 Cong.Rec. S6021 (daily ed. Apr. 25, 1959), reprinted in, 2 NLRB, *supra*, at 1230 (Senators Kuchel and McClellan expressing agreement that the purpose of the clause— "and to express any views, arguments, or opinions;"—was "to make certain that union members shall have freedom of speech not only in a union hall, but outside") (discussed in *Yanity*, 376 F.2d at 200). Admittedly, certain remarks in the legislative history are consistent with plaintiffs' argument that Congress simply assumed that unions regularly hold general membership meetings. See, *e.g.*, 105 Cong.Rec. S16,433 (daily ed. Sept. 3, 1959), reprinted in, 2 NLRB, *supra*, at 1451 (remarks of Senator Humphrey) ("There is only one way to protect democracy in government, in a union, or in any other institution.... If union

members really want unions which will be effective and will protect their interest[s], they had better get to the union meetings."). But Congress, and not the courts, is best suited to amend the LMRDA if the factual presuppositions of Congress prove skewed from the realities of union governance.

Several courts that have previously faced this precise issue have agreed with our construction of the statute. In particular, the Second Circuit, apparently the only circuit court of appeals to have considered this issue previously, reached the same result. *Yanity v. Benware*, 376 F.2d 197 (2d Cir.1967). At least three distinct courts have also reached this same result. *Linder v. Berge*, 567 F.Supp. 913, 917 (D.R.I. 1983), affirmed, 739 F.2d 686 (1st Cir. 1984);[3] *Birthwright v. Karsch*, 413 F.Supp. 119, 121 n. 6 (S.D.N.Y.1976); *Glassie v. Poole*, 58 L.R.R.M. 2359, 2360 (E.D.Mo.1965). One district court and one state appellate court have reached a contrary conclusion. *Wade v. Teamsters Local 247*, 527 F.Supp. 1169, 1174 (E.D.Mich. 1981); *Bausman v. NCR Independent Union*, 74 L.R.R.M. 2950 (Ohio Ct.App.1970). However, in both of these cases the union constitution specifically required general membership meetings to be held monthly. The court in *Bausman* seemed to rely heavily on this fact in reaching its conclusion. Although the court in *Wade* did not seem to rely on this fact in determining that the union's failure to hold regular meetings violated the LMRDA, the reasons advanced by that court are not persuasive. See Klare, *The Public/Private Distinction in Labor Law*, 130 U.Pa.L.Rev. 1358, 1375 (1982) (characterizing *Wade* court's holding and subsequent order to hold general meetings pursuant to judicially established guidelines as "extraordinarily interventionist"). Our result today accords with the previously expressed policy of this Court against judicial interference with internal union affairs. *McGinnis*, 774 F.2d at 200;

*Alvey v. General Electric Co.*, 622 F.2d 1279, 1285 (7th Cir.1980).

An examination of what plaintiffs are asking us to do makes it all the more apparent that Congress, rather than this Court, is the proper forum for plaintiffs' contention. If this Court were somehow to read 29 U.S.C. § 411(a) to imply a right to have regularly scheduled general meetings, then we would be faced with having to invent standards for determining how frequently such meetings should be held. Should such meetings be held annually? Monthly? Once every ten years? Should the standard vary according to the particular characteristics of a given union? Courts are simply not well suited for making these types of determinations. Congress is far better equipped to solve the problem by either setting forth a statutory standard for frequency of general union membership meetings or alternatively delegating authority to the Secretary of Labor to prescribe appropriate regulations.

■ Plaintiffs raise several other contentions related to the Union's policy on membership meetings. Plaintiffs first contend that the Union's failure to hold sectional meetings for all members constitutes unequal treatment that violates 29 U.S.C. § 411(a)(1). We disagree. While the denial by the Union of certain members' requests for sectional meetings might state a claim under Section 411(a), plaintiffs have not made any such allegations. The mere fact that relatively small percentages of union members had sectional meetings in given years does not show disparate treatment. No one has contended that this small percentage of attendance in each of the cited years consists of the same group of members. Moreover, the parties agree that all members of the Union were eligible to go to at least one of the sectional meetings held in 1978. Plaintiffs have simply failed to show the existence of a union policy which either explicitly or in practice did not address it. *Linder*, 739 F.2d at 690 n. 4.

---

3. The plaintiff in this case did not pursue this issue on appeal, and therefore the First Circuit

results in the disparate treatment of Union members.

Plaintiffs' second contention is that the quorum requirement of 25% violates 29 U.S.C. § 411(a). The quorum requirement does not affect the right of members to assemble and speak freely on union affairs outside of union meetings, nor does it prevent members from speaking freely at union meetings. The only right potentially infringed by a quorum requirement is the right to have general union membership meetings, but as we have already demonstrated, the statute does not create any such right. Since this union rule does not infringe a protected right, there is no need to reach the second step of the inquiry and address the reasonableness of the rule. See *Sadlowski*, 457 U.S. at 111, 102 S.Ct. at 2345; *McGinnis*, 774 F.2d at 200. Plaintiffs' contention therefore must be rejected.

We sympathize with plaintiffs' position. The failure to hold regular general membership meetings is not an admirable manner for conducting a union. The limited subject matter, lack of agendas, and infrequent occurrence make the sectional meetings less than ideal substitutes for general meetings. But unfair conduct by union officials is not tantamount to illegal conduct. Perhaps Congress did assume that there would be regularly scheduled general membership meetings, and for that reason did not draft a provision creating a right to have such meetings. But, as stated above, Congress, and not the courts, is the proper forum for correcting such a shortcoming in the present statutory framework.

The summary judgment for defendants is affirmed.