John O'CONNOR, Q.L. Patterson, Ronald Sievertson, Leon Ellis, Frances LaReau and Kenneth Macek, Plaintiffs,

v.

LOCAL 719, UNITED AUTO WORKERS, Defendant.

No. 89 C 05295.

United States District Court, N.D. Illinois, E.D.

May 8, 1990.

Arthur R. Ehrlich, Gerald A. Goldman, Goldman & Marcus, Chicago, Ill., for plaintiffs.

Michael B. Erp, Denise S. Poloyac, Katz Friedman Schur & Eagle, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

John O'Conner,[1] Q.L. Patterson, Ronald Sievertson, Leon Ellis, Frances LaReau and Kenneth Macek are members of Local 719 of the United Auto Workers. The plaintiffs claim that Local 719 violated their rights under the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411 ("LMRDA"). Currently before us is Local 719's motion for summary judgment. For the reasons explained below, we grant this motion.

### Background

The plaintiffs are six disgruntled union members who allege wrongdoing by union officials during the ratification of a collective bargaining agreement.[2] The plaintiffs were employed as maintenance painters by the Electro–Motive Division of General Motors ("Electro–Motive"). Their collective bargaining agent was Local 719, the local affiliate of the United Automobile, Aerospace and Agricultural Implement Workers of America ("the International Union"). During the fall of 1987, the International Union and Local 719 were in the process of negotiating new agreements with General Motors and Electro–Motive.

Local 719 and Electro–Motive reached a tentative local agreement, which included a provision for the consolidation of a number of production and skilled trade classifications. Local 719 scheduled this proposed agreement for a ratification vote on October 11, 1987. Pursuant to a provision of the constitution of the International Union, separate ratification votes were held for production employees and skilled trade employees. Although the production employees voted in favor of ratification, the skilled trade employees elected not to ratify the proposed agreement by a vote of 263 against ratification and 132 in favor of ratification.

Accordingly, Local 719 and Electro–Motive went back to the drawing board in an effort to draft an agreement that would satisfy the skilled trade employees. Beginning on October 11th, union and company officials re-negotiated the skilled trade provisions of the agreement. A meeting was held on November 4 to discuss the progress of negotiations and to allow union members to express their concerns. Finally, on November 11th, the two parties reached a tentative agreement.

Following the conclusion of negotiations on November 11th, officials of Local 719 contacted officials of the International Union. Because the National Agreement and the vast majority of local agreements had already been ratified, they decided that a ratification vote should be held as soon as possible. The union officials decided to hold the vote on November 16th, the following Monday. They chose this date because they believed that there would be greater participation if the election were held on a work day and members were given an opportunity to vote throughout the day.

Local 719 proceeded to inform its members of the impending vote. Officials of the Local 719 printed 500 copies of a notice that informed members of the vote. Al-

---

1. Although "O'Connor" is the name which appears in the caption, O'Conner is the correct spelling of the plaintiff's name. (Affidavit of John O'Conner)

2. Except where noted, the facts contained herein are undisputed. The facts are taken from the uncontested portions of the Defendant's Local Rule 12(*l*) Statement of Material Facts.

though the plaintiffs contend that this notice was not posted until Friday, November 13th, Local 719 have produced facts which suggest that it posted the notice on the 12th of November. In addition, union officials visited the plant and spoke with union members about the upcoming vote. Although it is undisputed that both officials who supported the contract and officials who opposed the contract contacted union members, the plaintiffs allege that Local 719 selectively informed only those union members who would support ratification.

The ratification vote was held on November 16th as scheduled. Members were permitted to vote at any time from 6:00 a.m. until 6:00 p.m. Union officials held informational meetings throughout the day for those members who sought additional information before voting. It is undisputed that five of the six plaintiffs voted in the election.[3] The Local Agreement was ratified by a vote of 255 for ratification and 234 against ratification.

On February 24, 1988, O'Conner, Macek, Sievertson, LaReau and Ellis filed an appeal with the Executive Board of the International Union. They contended that they had received insufficient advance notice of the second ratification vote. The Executive Board denied the appeal on two grounds. First, they found that the appeal was untimely pursuant to Article 33, § 4(c) of the International Union's constitution. Second, the Executive Board found that the appeal was without merit for a number of reasons. Among the reasons given were the absence of concrete evidence that any eligible member was denied the opportunity to vote and the fact that the number of voting participants exceeded the normal participation in such an election. This decision of the Executive Board was appealed to a Public Review Board, which also found the plaintiffs' contention of insufficient notice to be without merit.

### Standard of Review

"A motion for summary judgment should be granted only when there is no genuine issue of material fact and the moving party

is entitled to judgment as a matter of law." *Checkers, Simon & Rosner v. Lurie Corp.,* 864 F.2d 1338 (7th Cir.1989) (citation omitted). The moving party bears the burden of establishing the absence of any disputed facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If, however, the nonmoving party bears the burden of proving an issue at trial, it also bears the burden of presenting sufficient facts on summary judgment from which a trier of fact could find in its favor, and the moving party need only "[point] out to the District Court ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 2554; *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988).

### Discussion

The plaintiffs' claims against Local 719 stem from their alleged lack of notice of the second ratification vote. They level two substantive charges at the Union. First, they contend that the voting procedure chosen by Local 719 violates the Union's constitution and local bylaws. Second, the plaintiffs claim that Local 719 violated the LMRDA when it discriminated against them during the course of the ratification. Local 719 argues that it is entitled to summary judgment on both claims.

■ In support of their claim that Local 719 violated union regulations, the plaintiffs point to Article 19, § 3 of the International Union's constitution and Article 5 of Local 719's bylaws. However, the ratification vote did not violate either of these provisions. Article 19, § 3, of the International Constitution provides for ratification "at a meeting called especially for such purpose, or through such other procedure, approved by the Regional Director, to encourage greater participation of members in voting on the proposed contract or supplement." The ratification vote held by Local 719 constituted an "other procedure" pursuant to Article 19. The decision to allow members to vote at any time from 6:00 a.m. until 6:00 p.m. was designed to

---

**3.** There is an issue of fact as to whether Leon Ellis voted. Although he denies voting, there is

evidence which suggests that he may have participated.

encourage greater participation among the union members. The procedure was agreed to and approved by representatives of Local 719, the International Union and the Regional Director. Thus, the ratification vote was in complete accordance with the constitution of the International Union.

Similarly, the ratification procedure did not violate Local 719's Bylaws. The Bylaws impose no procedural constraints on Local 719's ability to conduct a ratification vote. Although the Bylaws specifically mandate certain procedures for the Union to follow, no provision is made for ratification votes. Moreover, Article 5, the specific provision on which the plaintiffs rely, prescribes the procedures to be followed for special membership meetings, not ratification votes. Because the plaintiffs have failed to identify any union regulation which was breached by the Union, we find that Local 719 is entitled to summary judgment on this claim.

■ We also find that the plaintiffs' claim under the LMRDA is without merit. The plaintiffs contend that the procedures employed by Local 719 violated the rights guaranteed to them by § 411 of the LMRDA. The relevant portion of § 411 provides:

> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

29 U.S.C. § 411(a)(1). This provision does not bestow union members with any particular rights. *Grant v. Chicago Truck Drivers, Helpers, Etc.*, 806 F.2d 114, 117 (7th Cir.1986). Instead, it proscribes discrimination and requires that a union treat all of its members equally. *Id.; McGinnis v.*

*Local U. 710, Intern. Bro. of Teamsters*, 774 F.2d 196, 199 (7th Cir.1985). In other words, a plaintiff attempting to state a claim under § 411(a)(1) must demonstrate that the Union failed to accord him certain rights that it extended to other members.

■ The plaintiffs in this case have not identified any facts on record which demonstrate that Local 719 discriminated against them. As a threshold matter, contrary to the plaintiffs' argument, their claim that Local 719 provided insufficient notice to the membership at large is not cognizable under § 411.[4] This is not a claim of discrimination, but an attempt to import a right to notice into the statute. Binding interpretations of § 411 preclude such a claim. *Grant v. Chicago Truck Drivers, Helpers, Etc.*, 806 F.2d at 117; *McGinnis v. Local U. 710, Intern. Bro. of Teamsters*, 774 F.2d at 199.

■ The only allegation in the complaint which could conceivably support a § 411 claim is the plaintiffs' charge that union officials selectively notified only those union members who supported ratification. According to the plaintiffs, the affidavits of Ronald Sievertson and Kenneth Macek support their claim of selective notification. These individuals both contend that on the morning of November 13th, they fortuitously overheard a union official inform members of Department 820 of the upcoming ratification vote.

These affidavits are insufficient to create a genuine issue of fact as to the claim of selective notification. The mere fact that a union official addressed a group of employees does not suggest that the Union was selectively notifying certain employees. There are no facts in the record which suggest that Department 820 was composed only of members who supported ratification. Moreover, it is undisputed that union officials who opposed ratification also canvassed the plant to gain support for their position. In short, the plaintiffs have not met their burden of producing

---

**4.** In addition to its substantive deficiency, we find this claim to be unsupported by the undisputed facts. A significantly larger proportion of the union membership voted in the second rat-

ification vote than participated in the first vote. Moreover, at least five of the plaintiffs received notice sufficient to enable them to participate.

facts from which a trier of fact could reasonably conclude that the Union engaged in selective notification. Therefore, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 106 S.Ct. at 2554 (1986).

 Furthermore, even if we were to find that the paltry facts produced by the plaintiffs created an issue of fact as to whether the Union personally notified only a portion of the membership, we would still grant summary judgment on the § 411 claim. Even if discriminatory, a union practice may be upheld if it is reasonable. *McGinnis v. Local U. 710, Intern. Bro. of Teamsters*, 774 F.2d at 199. Reasonableness is determined by balancing the alleged anti-democratic effect of the challenged rule and the Union interests urged in support. *Id., citing Alvey v. General Electric Co.*, 622 F.2d 1279, 1285 (7th Cir.1980); *United Steelworkers of America v. Usery*, 429 U.S. 305, 97 S.Ct. 611, 615, 50 L.Ed.2d 502 (1977). "Reasonableness here must also be interpreted in light of the general policy against judicial interference in the internal affairs of the unions." *Id.* (citations omitted).

Based upon the facts in the record, we find that Local 719 efforts to notify the membership were reasonable. The anti-democratic effect of its efforts was minimal, if not nonexistent. A much larger proportion of the skilled trade employees voted in the second election than the first. Any such effect was clearly outweighed by Local 719's legitimate interest in securing widespread participation within the constraints of a shortened timetable. It is unreasonable to expect Local 719 to have met with each member individually. Instead, the Union chose to send officials to visit the plant and meet with as many employees as possible. This "word-of-mouth" technique, coupled with widespread distribution of leaflets, was both successful and reasonable under the circumstances.

### Conclusion

For the foregoing reasons, we conclude that neither of the plaintiffs' claims can withstand Local 719's motion for summary judgment. Therefore, we grant summary judgment in favor of Local 719. It is so ordered.